Gregory S. Gilbert, Esq. (6310)
Dora V. Lane, Esq. (8424)
Erica C. Medley, Esq. (13959)
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: 702.669.4600
Fax: 702.669.4650
gsgilbert@hollandhart.com
dlane@hollandhart.com
ecmedley@hollandhart.com

*Attorneys for Defendant Las Vegas Basketball, L.P.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DEARICA HAMBY, an Individual,<br><br>Plaintiff,<br><br>v.<br><br>WNBA, LLC and LAS VEGAS BASKETBALL L.P. d/b/a LAS VEGAS ACES,<br><br>Defendants. | Case No.: 2:24-cv-01474-APG-DJA<br><br>**DEFENDANT LAS VEGAS ACES' MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED<br>(Argument by Junior Counsel) |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Las Vegas Basketball L.P. d/b/a Las Vegas Aces (the "Aces" or "Defendant") moves this Court to dismiss all claims filed against it by Plaintiff Dearica Hamby ("Plaintiff" or "Hamby"). This Motion is supported by the following Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument the Court may allow.

DATED this 11th day of September 2024.

**HOLLAND & HART LLP**

*/s/ Greg S. Gilbert*

Gregory S. Gilbert
Dora V. Lane
Erica C. Medley
*Attorneys for Defendant Las Vegas Basketball, L.P.*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.      INTRODUCTION**

3           Hamby's Complaint alleges the Aces traded the rights to her contract because she was

4   pregnant and retaliated against her after she created a social media post about the purported

5   pregnancy discrimination. Even employing the generous Rule 12 pleading standards, Hamby's

6   false allegations against the Aces fall short of stating a plausible claim for relief. Hamby's

7   retaliation claim is insufficiently pled because Hamby offers no facts to establish the requisite "but

8   for" causation, and assertions that are merely "consistent" with liability do not meet the necessary

9   pleading standards. Hamby's discrimination claim is similarly deficient because Hamby does not

10  present facts demonstrating she suffered some harm with respect to an identifiable term or

11  condition of employment, as required by *Muldrow v. City of St. Louis*, 601 U.S. 346, 144 S. Ct.

12  967, 974 (2024). Hamby also does not plead facts indicating other similarly situated Aces

13  employees were treated differently. Accordingly, her Complaint should be dismissed.

14  **II.     FACTUAL BACKGROUND[1]**

15          In 2018, the Las Vegas Aces officially launched as the only professional women's

16  basketball team in the state of Nevada. *See* ECF No. 1, ¶ 17. Prior to that time, Hamby was playing

17  for the San Antonio Stars, which is the team the Aces acquired to start their Las Vegas franchise.

18  *See id.* Thereafter, Hamby played for the Aces from 2018 to 2022. *See id.* ¶ 18. On June 28, 2022,

19  Hamby signed a two-year contract extension to continue playing with the Aces. *See id.* ¶ 28.

20          A few weeks later, on July 18, 2022, Hamby alleges she discovered she was pregnant with

21  her second child. *See id.* ¶ 31. Not long thereafter, on August 6, 2022, Hamby alleges she informed

22  the Aces' Head Coach Becky Hammon, as well as other coaching and training staff, that Hamby

23  was pregnant. *See id.* ¶ 32. Hamby alleges she confirmed she was pregnant with her doctor two

24  days later. *See id.* ¶ 33. Sometime thereafter, Hamby alleges she notified Natalie Williams, the

25  Aces' General Manager, that she was pregnant. *See id.* ¶ 34.

26  _____

27  [1] To meet the requisite pleading standard, the Aces assume, for purposes of this Motion only, that
    the allegations in Hamby's Complaint are true. In so doing, the Aces do not waive their right to
    contest Hamby's allegations at any future stage of these proceedings. The Aces expressly reserve
28  the right to deny any and all factual allegations in the Complaint.

**HOLLAND & HART LLP**
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1    On September 18, 2022, the Aces won their first WNBA Championship. *See id*. ¶ 35.

2  During a victory parade two days later, Hamby publicly announced to fans and media that she was

3  pregnant. *See id*. ¶ 36.

4    Around four months later, on January 15th and 16th, 2023, Hamby alleges Coach Becky

5  Hammon made two personal phone calls to her to let her know that she was going to be traded to

6  a different team. *See id*. ¶¶ 41-47. During the first call, Hamby alleges Coach Hammon made

7  several comments regarding Hamby's pregnancy, including that Hamby failed to take proper

8  precautions to avoid pregnancy and signed her extension contract with the Aces when Hamby

9  knew she was pregnant. *See id.* ¶¶ 41, 43. Hamby claims she stated to Coach Hammon she was

10  being traded because she was pregnant—a statement Hamby alleges Coach Hammon neither

11  admitted nor denied. *See id.* ¶ 47. In the second call, Hamby alleges Coach Hammon confirmed

12  Hamby would be traded. *See id.* ¶ 48.

13    On January 21, 2023, the Aces issued a public announcement that Hamby had been traded

14  to the Los Angeles Sparks. *See id*. ¶ 49. That same day, following the Aces' announcement, Hamby

15  issued a public statement of her own criticizing the trade and claiming she was discriminated

16  against due to her pregnancy. *See id*. ¶ 50. On February 8, 2023, the Aces announced the WNBA,

17  LLC ("WNBA") launched a formal investigation into the allegations raised by Hamby in her

18  January 21, 2023 social media post. *See id*. ¶ 52.

19    At some unspecified time after Hamby's January 21, 2023 trade, Hamby alleges the Aces

20  engaged in retaliatory acts including: (1) issuing a directive to Aces players and staff to cease

21  communication with Hamby; (2) making a false public statement, implying the Aces were aware

22  of Hamby's pregnancy since June 2022; (3) attempting to obtain Hamby's confidential medical

23  records after informing her she was no longer on the Aces; and (4) not inviting Hamby to attend a

24  White House ceremony with Vice President Harris to commemorate the Aces first WNBA

25  Championship, which occurred on August 25, 2023.[2] *See id*. ¶ 64. Hamby also alleges that on

26  

27  [2] Hamby failed to allege any dates associated with the White House visit. However, this White
House visit was publicly documented as occurring on August 25, 2023. *See* Andy Yamashita, *Aces
Visit White House to Celebrate WNBA Championship*, LAS VEGAS REV. J. (Aug. 25, 2023),

28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   September 17, 2023, the Aces directed video personnel not to show Hamby's daughter, Amaya,

2   on the arena video screen. *See id.* ¶ 64.

3          On March 6, 2023, Hamby gave birth to her son. *See id.* ¶ 53. She began playing for the

4   Los Angeles Sparks thereafter and went on to play in all 40 regular season games. *See id.* ¶ 55.

5   After the WNBA concluded its investigation into Hamby's allegations, the WNBA did not

6   announce any findings related to discrimination or retaliation, only that Coach Hammon

7   supposedly violated league and team "Respect in the Workplace" policies. *See id.* ¶ 57.[3]

8   **III.    LEGAL STANDARD**

9          When reviewing a Rule 12(b)(6) motion seeking the dismissal of a claim for failure to

10  state a claim upon which relief can be granted, courts must determine whether the complaint

11  contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*

12  *v. Twombly*, 550 U.S. 544, 570 (2007).  To overcome this defense, plaintiffs must "nudge[] their

13  claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Id.*

14  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

15  do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16         "Determining whether a complaint states a plausible claim for relief will . . . be a context-

17  specific task that requires the reviewing court to draw on its judicial experience and common

18  sense." *Iqbal*, 556 U.S. at 679.  A claim has facial plausibility when it pleads factual content that

19  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

20  alleged. *Twombly*, 550 U.S. at 556.  Where a complaint pleads facts that are "merely consistent

21  with" a defendant's liability, it "stops short of the line between possibility and plausibility of

22

23  *available   at*   https://www.reviewjournal.com/sports/aces/aces-visit-white-house-to-celebrate-
    wnba-championship-photos-2894111/. This Court may take judicial notice of the date of the White
24  House visit because it "can be accurately and readily determined from sources whose accuracy
    cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). "A court may take judicial notice of
25  'matters of public record' without converting a motion to dismiss into a motion for summary
26  judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

27  [3] While the WNBA also claimed the Aces had violated league rules pertaining to alleged
    impermissible player benefits, these purported findings have no relevance to Hamby's
28  discrimination and retaliation claims.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   'entitlement to relief.'"  *Id*. at 557.  Further, a court "is not required to accept as true allegations

2   that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Mendoza*

3   *v. Aurora Loan Servs., LLC*, No. 2:10-cv-02197-GMN-GWI, 2011 U.S. Dist. LEXIS 65991, at \*2

4   (D. Nev. June 13, 2011); *see also T1 Payments LLC v. New U Life Corp.*, No. 2:19-cv-01816-

5   APG-DJA, 2022 U.S. Dist. LEXIS 11189, at \*7 (D. Nev. Jan. 21, 2022) (stating the court does

6   "not assume the truth of legal conclusions merely because they are cast in the form of factual

7   allegations").

8   **IV.    ARGUMENT**

9        **A.    Hamby's Retaliation Claim Against the Las Vegas Aces Is Insufficiently Pled**

10       Hamby asserts that she was subjected to retaliation because she publicly complained about

11  her "discriminatory trade."  ECF No. 1, ¶¶ 50, 64. Hamby advances the following contentions as

12  the basis for her retaliation claim:

13       1.  The Aces issued a directive to unnamed players and staff not to communicate with

14         Hamby. *See* ECF No. 1, ¶ 64.

15       2.  Natalie Williams, the Aces' General Manager, purportedly made a false public

16         statement that "implied" Hamby and the Aces were aware of Hamby's pregnancy

17         since June 2022. *See id.*

18       3.  The Aces allegedly attempted to wrongfully obtain confidential medical records from

19         Hamby after informing her she was no longer a member of the Aces. *See id.*

20       4.  The Aces supposedly refused to extend an invitation to Hamby to attend a White

21         House ceremony with Vice President Kamala Harris to commemorate the Las Vegas

22         Aces' first WNBA Championship. *See id.*

23       5.  On September 17, 2023, the Aces allegedly directed video personnel not to show

24         Hamby's daughter on the arena video screen, and when she was inadvertently shown

25         on the screen, the camera immediately cut away from the shot. *See id.*

26       Because Hamby offers no direct evidence any of these purported actions stemmed from

27  her social media post, Hamby has to rely on the burden-shifting framework articulated in

28  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Brooks v. Capistrano*

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1    *Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1035-36 (C.D. Cal. 2014). Under *McDonnell Douglas*,

2    Hamby must first establish a prima facie case of retaliation by demonstrating: (1) she "undertook

3    a protected activity under Title VII," (2) the Aces subjected her to an adverse employment action,

4    and (3) there is "a causal link between the two." *Vasquez v. City of Los Angeles*, 349 F.3d 634, 646

5    (9th Cir. 2003).  As to the third element, the United States Supreme Court has held that Title VII

6    retaliation claims must meet a stricter standard of causation than discrimination claims. *See Univ.*

7    *of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). More specifically, retaliation "must

8    be proved according to traditional principles of but-for causation," which "requires proof that the

9    unlawful retaliation would not have occurred in the absence of the alleged wrongful action or

10   actions of the employer." *Id*.

11          Here, Hamby fails to state a claim because, among other things, she has not pled facts to

12   establish a causal connection between her social media post and the claimed adverse employment

13   actions she experienced.[4]

14          **1.     Hamby Has Not Pled the Requisite Awareness**

15          Preliminarily, Hamby fails to allege the unnamed Aces employees who engaged in alleged

16   retaliatory conduct had prior knowledge of her social media post. A retaliation claim must contain

17   sufficient facts to allow for an inference "that the defendant was aware that the plaintiff had

18   engaged in protected activity." *Harrington v. Nev. ex rel. Nev. Sys. of Higher Educ.*, No. 2:18-cv-

19

20   [4] The Aces do not concede that Hamby's social media post constituted "protected activity" because
     employees who act in bad faith and make false complaints are not protected by anti-retaliation
21   statutes. *See, e.g.*, *Spadola v. N.Y. City Transit Auth.*, 242 F. Supp. 2d 284, 292 (S.D.N.Y. 2003)
     (stating employee loses Title VII's anti-retaliation protections if a complaint is not "subjectively
22   genuine or objectively reasonable"); *Sanders v. Madison Square Garden, L.P.*, 525 F. Supp. 2d
     364, 367 (S.D.N.Y. 2007) ("[E]mployees who make up false complaints of discrimination are not
23   protected by the act . . . ."). Title VII's "opposition clause does not protect the making of a
24   knowingly false allegation." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 898 (4th Cir. 2017).
     "Rather, for an employee's report of information purportedly relating to a Title VII violation to be
25   protected under the opposition clause, the employee must subjectively believe that the facts she is
     reporting are true." *Id.* An employee who knowingly makes false allegations of discrimination
26   enjoys no statutory protection from retaliation. *See Gilooly v. Mo. Dept. of Health & Senior Servs.*,
27   421 F.3d 734, 743 (8th Cir. 2005); *see also Villa*, 858 F.3d at 898 (4th Cir. 2017). The Aces
     similarly do not concede that any of the alleged retaliatory actions constitute a "materially adverse
28   employment action."

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

00009-APG-PAL, 2018 U.S. Dist. LEXIS 152580, at *8 (D. Nev. Sep. 6, 2018); *see also Maner v. Dignity Health*, 9 F.4th 1114, 1127 (9th Cir. 2021) ("To establish a causal connection between opposition to employer conduct and a retaliatory action, the plaintiff must show 'the defendant was aware that the plaintiff had engaged in protected activity.'"). This pleading flaw is fatal to Hamby's claim and ability to demonstrate causation. *See, e.g.*, *Maner*, 9 F.4th at 1127 ("Logically, only events taking place before the decision to take an adverse employment action and known to the employer at the time could have caused the employer's decision.").

### 2.    Hamby Cannot Establish Causation through Temporal Proximity

A plaintiff can show a causal link between alleged protected activity and an adverse employment action by alleging facts "sufficient to raise the inference that her protected activity was likely the reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). While causation may sometimes be inferred based on temporal proximity, such proximity must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (rejecting gap of twenty months between protected conduct and adverse employment action as not causally related, stating the temporal proximity "must be 'very close'") (citing *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four-month period insufficient)); *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (eight-month period insufficient).

Unless the adverse action is very closely connected in time to the protected activity, the employee must present evidence (or in this case, plead facts) "beyond mere temporal proximity to establish causation." *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (cited by the Ninth Circuit in *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002)); *EEOC v. Zoria Farms, Inc.*, No. 1:13-cv-01544, 2016 U.S. Dist. LEXIS 64328, at *24 (E.D. Cal. May 13, 2016) ("Causation can be inferred from timing alone where the adverse employment action follows the protected activity very closely in time.").

Here, the Complaint lacks factual allegations that would lead to an inference of causal connection—based on temporal proximity or otherwise.  Hamby alleges she engaged in protected activity when she issued a public statement via social media on January 21, 2023. *See* ECF No. 1,

¶¶ 50 & 64. Hamby further states that after her protected activity, the Aces engaged in the five retaliatory acts outlined above. *See id.* ¶ 64. However, Hamby provides no dates for four of the five retaliation allegations, failing to raise an inference of causation via temporal proximity. Hamby simply alleges that the retaliatory acts occurred ***after*** she engaged in protected activity, which is not sufficient to show a causal link. *Harrington*, 2018 U.S. Dist. LEXIS 152580, at \*9 (dismissing retaliation claim where plaintiff provided no dates for alleged retaliatory conduct, making it impossible to determine whether events were close enough to infer causation).

Hamby's failure to provide dates is, in and of itself, fatal to her claim. For the dates that can be determined, they are too far removed from the protected activity to infer causation. For instance, given that the White House visit occurred on August 25, 2023, it was over seven months after her social media post. Similarly, the alleged Aces' directive that Hamby's daughter be removed from the arena video purportedly occurred on September 17, 2023, nearly eight months after Hamby's public statement. *See* ECF No. 1, ¶ 64. These seven and eight-month gaps are not close enough to infer causation. *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (seven-month time lapse did not show causation); *Manatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (nine-month time lapse did not show causation). Given the passage of time and absence of other evidence of a causal link, Hamby's allegations that certain alleged events occurred *after*—but not "but for" her social media post—cannot sustain her claim.

### 3.     Hamby Offers No Other Facts to Establish "But For" Causation

Because Hamby has not raised an inference of causation via temporal proximity, she must plead other facts to establish causation. *See Conner*, 121 F.3d at 1395 (10th Cir. 1997). Importantly, even if Hamby's allegations are "consistent" with purported liability (which the Aces do not concede), this does not meet the *Twombly* pleading standard. *See Twombly*, 550 U.S. at 557 (where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief'"). Viewing Hamby's allegations through the appropriate legal lens, Hamby's Complaint is facially deficient.

Turning to Hamby's claim the Aces issued a directive to players and staff to cease communications with her, Hamby does not identify the person(s) with the Aces who issued this

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   supposed directive, nor does Hamby identify the players who received the directive and/or stopped

2   communicating with her as a result of the directive. *See* ECF No. 1, ¶ 64. Hamby also fails to

3   properly allege that "but for" her social media post, the claimed directive would not have been

4   given or followed. As they stand, Hamby's allegations are also consistent with, for example,

5   players and staff not deeming it necessary to communicate with Hamby because she was no longer

6   a part of the team, because they did not wish to communicate with her in general, or because of

7   her affiliation with her boyfriend who is rumored to have been verbally and physically abusive to

8   Hamby.

9          Regarding Hamby's allegation that Natalie Williams, the Aces' General Manager,

10  retaliated against Hamby by making a false public statement that "implied" Hamby and the Aces

11  were aware of Hamby's pregnancy since June 2022, Hamby does not plead when Williams's

12  alleged statement was made, or that Williams would not have made the statement but-for Hamby's

13  social media post.[5]

14         With respect to the assertion the Aces attempted to wrongfully obtain confidential medical

15  records from Hamby after informing Hamby she was no longer a member of the Aces, to the extent

16  such an attempt can even be deemed an adverse employee action, Hamby does not allege any facts

17  demonstrating when the purported request was made, or that but-for Hamby's social media post,

18  the Aces would not have requested her medical information. This is important because the Aces

19  have no records of any request for Hamby's medical files after Hamby's January 21, 2023 trade.

20         Next, Hamby alleges the Aces refused to extend an invitation to Hamby to attend a White

21  House ceremony with Vice President Kamala Harris to commemorate the Las Vegas Aces' first

22  WNBA Championship. *See id.* Hamby cannot offer facts establishing but-for causation for this

23  invitation either. It is just as plausible Hamby was not invited to the White House because the visit

24  was organized in accordance with the WNBA preference that the event occur on August 25, 2023,

25  a day when the team was already in Washington D.C. for a regular season game in an effort to

26

27  [5] The logical inconsistencies in Hamby's allegations should not be lost on the Court. If Williams
    did make the supposed statement, then the Aces would have signed Hamby's contract extension
28  knowing she was pregnant, which greatly undermines Hamby's pregnancy discrimination claim.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   save costs. It is also just as plausible the Aces did not invite Hamby or Iliana Rupert (also a member

2   of the 2022 championship team) because their respective teams (Los Angeles Sparks and Atlanta

3   Dream) had a game against each other in Atlanta that same day.[6] Accordingly, Hamby cannot

4   establish "but for" causation for her lack of invitation.

5          Lastly, Hamby alleges that on September 17, 2023, the Aces retaliated against her because

6   an alleged directive was given to arena video personnel prohibiting the showing of Hamby's

7   daughter on an arena video screen. *See id.* Hamby also claims that when her daughter was

8   inadvertently shown on the arena video screen, the camera immediately cut away from the shot.

9   *See id.* As with her other retaliation claims, Hamby offers no facts to establish "but for" causation.

10  Hamby's allegations are also, for example, consistent with the Aces being concerned that Hamby

11  was seen dropping off her six-year-old daughter at Michelob Arena and proceeding to leave the

12  building with Hamby's son, but not with her daughter.

13         In sum, Hamby's retaliation claim should be dismissed because Hamby cannot factually

14  establish a causal relationship between her claimed protected activity and the supposed adverse

15  employment actions she purportedly experienced.

16  **B.      Hamby Fails to State a Claim of Sex Discrimination**

17         Title VII prohibits employee discrimination on the basis of sex, which, through the

18  Pregnancy Discrimination Act, includes discrimination based on pregnancy.[7] *See* 42 U.S.C.

19  § 2000e-2(a); *id.* § 2000e-(k); *see also Young v. UPS*, 575 U.S. 206, 210 (2015) ("The Pregnancy

20  Discrimination act makes clear that Title VII's prohibition against sex discrimination applies to

21  discrimination based on pregnancy."); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462

22  U.S. 669, 684 (1983) (recognizing under the Pregnancy Discrimination Act, "for all Title VII

23

24  [6] Similar to the date of the White House event, this Court can also take judicial notice of the
    publicly available information concerning the LA Sparks vs. Atlanta Dream game on
25  August 25, 2023. *See* Associated Press, *Nneka Ogwumike has 100th career double-double to rally
    Sparks past Dream 83-78 for 6th straight win*, ESPN (Aug. 25, 2023),
26  https://www.espn.com/wnba/recap/_/gameId/401507331; *see also supra* note 2.

27  [7] Hamby also brought her discrimination claim under NRS 613.330, which "is a state-law analog
    to federal Title VII"; under either one, "the analysis is the same." *Lige v. Clark Cty.*, No. 2:16-cv-
28  00603-JAD-PAL, 2018 U.S. Dist. LEXIS 26479, at *4 (D. Nev. Feb. 15, 2018).

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1  purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of

2  her sex").

3       To state a claim for sex discrimination under Title VII, a plaintiff must allege "direct or

4  circumstantial evidence of discrimination" or can proceed "using the *McDonnell Douglas Corp.*

5  *v. Green* burden-shifting test." *Hittle v. City of Stockton*, 101 F.4th 1000, 1012 (9th Cir. 2024). If

6  using the *McDonnell Douglas* framework, "a plaintiff must allege she (1) belongs to a protected

7  class; (2) was qualified for the position; (3) was subject to an adverse employment action; and

8  (4) similarly situated individuals outside her protected class were treated more favorably, or that a

9  discriminatory reason motivated the employer." *O'Brien v. Wynn Las Vegas, LLC*, No. 2:17-cv-

10 02801-JAD-CWH, 2019 U.S. Dist. LEXIS 168870, at \*6-7 (D. Nev. July 10, 2019) (dismissing

11 claim for failure to allege fourth element) (citing *Reynaga v. Roseburg Forest Prods.*, 847 F.3d

12 678, 690-91 (9th Cir. 2017)); *see also Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir.

13 2010) (reciting very similar prima facie case elements).[8]

14       **1.    Hamby Fails to State a Claim Using Direct or Circumstantial Evidence**

15      Here, Hamby has failed to allege sufficient direct or circumstantial evidence to state a

16 claim of discrimination. While Hamby alleges Coach Hammon made comments about her

17 pregnancy during a phone call prior to her trade to the Los Angeles Sparks, *see* ECF No. 1, at 7-8,

18 these alleged comments do not constitute direct evidence, which is evidence that "if believed,

19 proves the fact of discriminatory animus without inference or presumption." *Hittle*, 101 F.4th at

20 1012-13 (quoting *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005)). Hamby's

21 allegations regarding Coach Hammon's statements require an inference or presumption that the

22 trade was made because of Hamby's pregnancy. Hamby's own allegations demonstrate the

23 presumption and inferences required to establish a discriminatory animus. *See, e.g.*, ECF No. 1,

24 ¶ 46 (stating Coach Hammon's statements "imply[]" Hamby agreed she would not get pregnant

25 during the two-year extension period).

26

27 [8] In the analysis below, the Aces do not rely on *Young v. UPS* as *Young* concerned allegations the
   defendant denied the plaintiff a pregnancy-related accommodation while providing the
   accommodation to similarly situated non-pregnant employees. Hamby's allegations do not involve

28 a failure to accommodate her pregnancy.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1    "Circumstantial evidence, on the other hand, is evidence that requires an inference to

2    demonstrate discrimination and must be 'specific and substantial . . . .'" *Farrens v. Esper*, 806 F.

3    App'x 539, 541 (9th Cir. 2020). Even under the lower standard for circumstantial evidence,

4    Hamby's allegations are equally deficient because they are not specific and substantial to

5    demonstrate a discriminatory motive, particularly considering Hamby failed to allege Coach

6    Hammon was the decisionmaker. The Ninth Circuit requires that any derogatory comments be

7    "made by a decisionmaker" to constitute "direct evidence of discriminatory animus" or to "create

8    an inference of discriminatory motive." *Hittle*, 101 F.4th at 1013 (quoting *Cordova v. State Farm*

9    *Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997). Nowhere in the Complaint does Hamby allege

10   Coach Hammon, rather than the General Manager or President of the team, served as the

11   decisionmaker to trade Hamby. Instead, Hamby alleges it was Defendant Las Vegas Aces' decision

12   to trade her—not Coach Hammon's decision. *See* ECF No. 1, ¶ 70. As such, Hamby has failed to

13   state a claim for sex discrimination using direct or circumstantial evidence.

14           **2.       Hamby Fails to State a Claim Using *McDonnell Douglas***

15           Hamby's discrimination claim does not fare any better under the *McDonnell Douglas*

16   framework because she has failed to allege similarly situated individuals outside her protected

17   class were treated more favorably.[9] "In order to show that the 'employees' allegedly receiving

18   more favorable treatment are similarly situated . . . , the individuals seeking relief must

19   demonstrate, at the least, that they are similarly situated to those employees in all material

20   respects." *Moran v. Selig*, 44 F.3d 748, 755 (9th Cir. 2006).

21           Here, Hamby's Complaint is completely devoid of allegations—let alone facts—that the

22   Aces treated similarly situated individuals outside Hamby's protected class more favorably.

23   Hamby will not be able to make such a showing for two reasons. First, there are no other employees

24   _____

25   [9] While comparator evidence is not always required in every case so long as "other circumstances
     surrounding the adverse employment action give rise to an inference of discrimination," *Hittle*,

26   101 F.4th at 1012, Hamby similarly fails to allege sufficient facts to give rise to such an inference
     because, as articulated herein, she: (1) lacks direct evidence of discriminatory intent by a

27   decisionmaker; and (2) there is a significant gap between her announcement of her pregnancy
     between August-September 2022 until her alleged "adverse employment action" (i.e., trade to the

28   LA Sparks in January 2023), weakening her claim of discriminatory intent.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   who were similarly situated to Hamby in all material respects, and her failure to identify alleged

2   comparators is not surprising. Hamby was the *highest* paid non-core player on the team, and by

3   trading Hamby and releasing another player, the Aces were able to secure three new players

4   (Candace Parker, Cayla George, and Alysha Clark) and re-sign Kiah Stokes.[10] Second, other

5   players who, to the best of the Aces' knowledge, were not pregnant, were also not retained—which

6   is common in professional sports, especially considering the strict salary limitations the WNBA

7   teams face. Accordingly, Hamby has not properly stated a pregnancy discrimination claim, and

8   her Complaint should be dismissed. *See Gage v. Mayo Clinic*, No. CV-22-02091-PHX-SMM,

9   2023 U.S. Dist. LEXIS 224416, at *22-23 (D. Ariz. Dec. 15, 2023) (granting motion to dismiss

10  pregnancy discrimination claim where plaintiff failed to adequately allege individuals outside her

11  protected class were treated more favorably).

12          **3.      Hamby Fails to Show the Requisite Harm**

13          Finally, even if Hamby could factually plead the other pregnancy discrimination claim

14  elements, Hamby cannot adequately allege her trade to the Los Angeles Sparks constituted a

15  sufficient adverse employment action. "To make out a Title VII discrimination claim, a transferee

16  must show some harm ***respecting an identifiable term or condition of employment***." *Muldrow v.*

17  *City of St. Louis*, 601 U.S. 346, 144 S. Ct. 967, 974 (2024) (emphasis added). Hamby's allegations

18  fail to properly state an adverse employment action for two reasons: (1) the purported harm Hamby

19

20  _____

21  [10] Candace Parker, a Hall of Famer, has won two WNBA Championships with two different teams.
    Ms. Parker has also won two WNBA MVP Awards (2008, 2013), a WNBA All-Star Game MVP

22  Award (2013), two Olympic gold medals (2008, 2012), and the WNBA Rookie of the Year Award
    (2008).

23  Cayla George has played in multiple basketball leagues, including the Australian Women's

24  National Basketball League ("WNBL"), the Central Australian Basketball League, and the
    WNBA. She won the WNBL championship in 2015, 2016, 2018, and 2022, and was the WNBL's

25  most valuable player in 2023.

26  Alysha Clark has won two WNBA Championships (2018 and 2020, with Seattle Storm). She was
    also recognized as the Most Valuable Player in a Polish basketball league when her team won that

27  league's championship. In 2019, Ms. Clark won a Ligue Féminine de Basketball championship
    with her French team, Lyon Asvel. In 2023, Ms. Clark won the WNBA Sixth Player of the Year

28  award.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1   suffered does not pertain to terms and conditions of employment; and/or (2) Hamby's allegations

2   are conclusory and lack sufficient factual support.

3          Even assuming a "trade" for a professional athlete was akin to an "involuntary transfer,"

4   Hamby's allegations fall far short of the extreme examples recently articulated by the United States

5   Supreme Court. In *Muldrow*, the Court highlighted several examples of involuntary transfers and

6   how they meet the "some harm" standard articulated therein. *See id.* at 975. For example, the

7   plaintiff in *Muldrow* was transferred from a "premier position" in the Police Department, where

8   she was a plain-clothes detective with weekends off and oversaw multiple units, to a uniformed

9   patrol position with administrative work and few weekends off. *See id.* at 973. The Court found

10  this transfer met the "some harm" threshold. Similarly, in other Circuit Court cases, the Court

11  explained that a school principal that was forced into an administrative role with less supervisees

12  met the "some harm" threshold, as did a shipping worker that was required to take a position

13  involving only nighttime work. *See id.* at 975.

14         Here, on the other hand, Hamby was traded to another professional women's basketball

15  team (i.e., the Los Angeles Sparks) and played all 40 regular season games. *See* ECF No. 1, ¶ 55.

16  She did not suffer a loss of a premier position, as was the case in *Muldrow*. Her transfer, in and of

17  itself, is not enough to meet *Muldrow*'s threshold—there must also be "some harm" to the terms

18  and conditions of her employment beyond the transfer.[11] Although Hamby claims to have lost the

19  prestige and brand value "typically" associated with being part of a two-time WNBA champion

20  franchise, *see* ECF No. 1, ¶ 63, Hamby does not present any facts demonstrating she actually

21  suffered loss of prestige and brand by playing for the Los Angeles Sparks instead of the Aces. (In

22  fact, one could argue she acquired prestige and brand by being able to play in every single game

23  for the Los Angeles Sparks.) Accordingly, even if loss of prestige and brand value are deemed

24  "adverse employment actions," Hamby's conclusory statements are insufficient to properly state

25  a claim. *See, e.g.*, *Howell v. Transform SR LLC*, 2024 U.S. Dist. LEXIS 103378, at *6 (D. Ariz.

26

27  [11] *See, e.g.*, *Muldrow*, 144 S. Ct. at 980 (Kavanaugh, J., concurring) ("[T]he Court's opinion goes
    on to require that a plaintiff in a discriminatory-transfer case show at least 'some harm' beyond
28  the harm of being transferred on the basis of race, color, religion, sex, or national origin.").

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

June 11, 2024) (dismissing claim and stating "[t]hese are all adverse employment actions; however, Plaintiff's descriptions of these actions are vague and conclusory").

None of Hamby's other allegations involve the terms and conditions of her employment. Specifically, her allegation that the taxes in California are more burdensome is not an adverse employment action because the Supreme Court made clear the harm must involve "an identifiable term or condition of employment." *Muldrow*, 144 S. Ct. at 974; *see also Rios v. Centerra Grp. LLC*, 106 F.4th 101, 113 (1st Cir. 2024) (applying *Muldrow* to reject a "mere admonition by a supervisor without any formal consequences" as an adverse employment action because it did not change the terms or conditions of plaintiff's employment); *Spann v. FedEx Freight, Inc.*, No. 3:23-CV-399, 2024 U.S. Dist. LEXIS 113983, at *7-8 (S.D. Miss. June 17, 2024) (applying *Muldrow* to reject a claim that defendant failed to timely and fully investigate a forklift incident because there were not changes to her terms, conditions or privileges of employment). If Hamby's allegation on tax burdens were adopted, it would eviscerate the requirement for adverse employment actions in any transfer case, as any transfer could involve different state or local taxes (income, property, sales, etc.) and associated laws that are more or less favorable. Finally, even if California taxes could be deemed an adverse employment action for discrimination purposes, Hamby does not plead she has actually paid California taxes in excess of what she would have been required to pay had she remained with the Aces.

Similarly, Hamby's allegations she lost marketing and/or endorsement opportunities are equally unavailing because those types of opportunities are not tied to the terms and conditions of her employment. An athlete's endeavors to market their name, image, and likeness are handled through their agents—not the team. *Cf. France v. Bernstein*, 43 F.4th 367, 370 (3d Cir. 2022) (explaining how agents represent "professional athletes in matters other than their playing contracts, such as marketing and endorsement contracts"). Hamby also does not provide any facts regarding the alleged marketing and/or endorsement opportunities she lost as a result of the trade and without such facts, her conclusory allegations are insufficient to state a claim for relief. *See, Howell*, 2024 U.S. Dist. LEXIS 103378, at *6.

15

## V.     CONCLUSION

For the foregoing reasons, the Aces respectfully request that this Court dismiss Plaintiff Dearica Hamby's claims against the Aces.

DATED this 11th day of September 2024.

**HOLLAND & HART LLP**

_/s/ Greg S. Gilbert_
Gregory S. Gilbert
Dora V. Lane
Erica C. Medley
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

_Attorneys for Defendant Las Vegas Basketball, L.P._

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

**CERTIFICATE OF SERVICE**

I hereby certify that on the  11th day of September, 2024, a true and correct copy of the

foregoing **DEFENDANT LAS VEGAS ACES' MOTION TO DISMISS** was served by the

following method(s):

☒        Electronic:  by submitting electronically for filing and/or service with the United States
         District Court, District of Nevada's e-filing system and served on counsel electronically
         in accordance with the E-service list to the following email addresses:

         Dana Sniegocki, Esq.
         HKM Employment Attorneys LLP
         101 Convention Center Drive, Suite 600
         Las Vegas, Nevada 89109
         E-mail: dsniegocki@hkm.com

         Erin S. Norgaard, Esq.
         HKM Employment Attorneys LLP
         E-mail: enorgaard@hkm.com

         Artur Davis, Esq.
         HKM Employment Attorneys LLP
         Email: adavis@hkm.com

         *Attorneys for Plaintiff*

                                                    /s/ Michelle R. Willoughby
                                                    An Employee of Holland & Hart LLP

32792207_v9

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

17