**TALG, NV, LTD**
Ismail Amin, Esq. (9343)
Marian L. Massey, Esq. (14579)
5852 S. Durango Dr., Suite 105
Las Vegas, Nevada 89113
Tel.: (702) 954-3861
Fax.: (949) 266-8406
iamin@talglaw.com
mmassey@talglaw.com

**PROSKAUER ROSE LLP**
Elise M. Bloom (*pro hac vice pending*)[1]
Michelle A. Annese (*pro hac vice pending*)
Jordan B. Glassberg (*pro hac vice pending*)
Eleven Times Square
New York, New York 10036-8299
Tel.: (212) 969-3000
Fax: (212) 969-2900
ebloom@proskauer.com
mannese@proskauer.com
jglassberg@proskauer.com

*Attorneys for Defendant WNBA, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DEARICA HAMBY<br><br>                    Plaintiff,<br><br>    vs.<br><br>WNBA, LLC and LAS VEGAS BASKETBALL L.P. *doing business as* LAS VEGAS ACES<br><br>                    Defendants. | Case No. 2:24-cv-01474-APG-DJA<br><br>**DEFENDANT WNBA, LLC' MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND** |

---

[1] Counsel from Proskauer Rose LLP have complied with LR IA 11-2 by submitting applications for admission to practice in this case.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), Defendant WNBA, LLC (the "WNBA"), by and through its undesigned counsel, respectfully moves to dismiss Plaintiff Dearica Hamby's Complaint and Jury Demand (ECF No, 1) ("Compl."), as to the claims asserted against the WNBA, with prejudice, for failure to state a claim upon which relief can be granted.  The WNBA's Motion is supported by the following Memorandum of Points and Authorities, with the exhibits attached hereto, the pleadings and papers on file herein, and any other evidence and oral argument the Court may entertain at the hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Dearica Hamby ("Hamby"), a professional basketball player for the Los Angeles Sparks, brings discrimination and retaliation claims against her former team, the Las Vegas Aces (the "Aces"), and retaliation claims against the WNBA.

More specifically, as to the WNBA, Hamby asserts retaliation claims under Title VII of the Civil Rights of 1964 ("Title VII") and Nevada Revised Statute ("NRS") 613.340, which she bases on two separate allegations.  First, Hamby alleges that the WNBA retaliated against her by failing to adequately investigate and remedy her complaint regarding her experience playing for the Aces.  Second, Hamby alleges that the WNBA retaliated against her by failing to extend[2] the term of a Marketing and Promotional Agreement ("Marketing Agreement" or "Agreement") after it expired pursuant to its express terms on October 28, 2023.

The WNBA seeks dismissal of Hamby's retaliation claims against it in their entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for several independent reasons.

---

[2] Without alleging that she even requested a new Marketing Agreement, Hamby alleges that the WNBA "refused to extend" the Marketing Agreement, even though the Agreement was for a fixed term with a set expiration date. (*See* Compl. ¶¶ 65, 99.)  The WNBA assumes that Hamby is alleging that the Marketing Agreement should have been renewed and/or that she should have been offered another agreement, but the WNBA uses the terms "extend" and "extended" herein to be consistent with Hamby's allegations.

1

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

First, Hamby's retaliation claims under Title VII and NRS 613.340 fail in their entirety because Hamby does not plausibly allege that the WNBA "employed" her, a necessary prerequisite for bringing retaliation claims under both statutes.

Second, Hamby's Title VII and NRS retaliation claims premised on the WNBA's alleged failure to investigate and remedy her complaint should be dismissed because a failure to investigate and remedy an employee's discrimination complaint are not adverse employment actions under Title VII and NRS 613.340, and therefore cannot form the basis of a retaliation claim as a matter of law.

Third, Hamby's Title VII and NRS retaliation claims premised on the allegation that the WNBA did not extend the term of the Marketing Agreement with the WNBA should be dismissed because:

  i. Hamby did not file a charge of discrimination asserting claims regarding the Marketing Agreement with the Equal Employment Opportunity Commission ("EEOC") or the Nevada Equal Rights Commission ("NERC"), and her time to do so has expired, meaning that she failed to exhaust her administrative remedies under Title VII and NRS 613.340;

  ii. Hamby fails to state a retaliation claim under Title VII or NRS 613.340 because she was an independent contractor under the Marketing Agreement, and it is well-settled that Title VII and NRS 613.340 do not apply to independent contractors; and

  iii. Hamby cannot make out a *prima facie* case of retaliation under Title VII or NRS 613.340 as a matter of law based on the Marketing Agreement because there is no temporal proximity between her complaint on January 21, 2023, and the expiration and non-extension of the Marketing Agreement on October 28, 2023, nor is there any other evidence of causation pled in the Complaint.

Finally, Hamby's retaliation claim against the WNBA under NRS 613.340 should be dismissed because Hamby was not employed in Nevada at the time of the events giving rise to her claims (*i.e.*, the WNBA's investigation and alleged failure to remedy her complaint, and the non-extension of the Marketing Agreement), and therefore, she is not covered under Nevada law.

Accordingly, for the foregoing reasons and as detailed herein, Hamby's retaliation claims under Title VII and NRS 613.340 against the WNBA should be dismissed in their entirety with prejudice because any amendment would be futile.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### RELEVANT FACTS[3]

**A.      Defendants The WNBA and Las Vegas Aces.**

The WNBA is a professional women's basketball league that presents basketball games to the public. (Compl. ¶ 12.)  WNBA teams, including the Las Vegas Aces, are separately owned and operated from the WNBA. (*Id.* ¶ 13.)  As a professional sports league, the WNBA oversees and enforces compliance with rules, regulations, and procedures agreed to by its member teams, including the Aces. (*Id.*)

One of the teams in the WNBA is the Las Vegas Aces, which plays in the Las Vegas metropolitan area. (*Id.*)  Like all WNBA teams, the Aces directly contract with the players who play on its team. (*Id.* ¶¶ 28-30.)  The Aces also decide which players to draft, sign, trade, and release from their contracts. (*Id.* ¶¶ 16, 48-49.)

**B.      Plaintiff Dearica Hamby And Her Employment With The Aces.**

Hamby is a professional basketball player. (*Id.* ¶ 11.)  Hamby began her professional basketball career when she was drafted and signed by the San Antonio Stars in 2015. (*Id.* ¶ 16.)  Hamby played for the Stars through the 2017 season, when the Stars were purchased by new ownership and relocated to become the Las Vegas Aces. (*Id.* ¶ 17.)  The Aces acquired Hamby's contract beginning with the 2018 season. (*Id.* ¶¶ 17-18.)  In June 2022, Hamby signed a contract extension with the Aces for the 2023 and 2024 WNBA seasons. (*Id.* ¶ 28.)

**C.      Hamby Informs The Aces Of Her Pregnancy.**

In her Complaint, Hamby alleges that on July 18, 2022, while employed by the Aces, she learned that she was pregnant, and that she subsequently informed Aces Head Coach Becky Hammon and Aces General Manager Natalie Williams of her pregnancy. (*Id.* ¶¶ 31-32, 34.)  Hamby further alleges that after announcing her pregnancy, she "experienced notable changes in the way she was treated by the Las Vegas Aces staff," and that during a phone call on January 15, 2023, Coach Hammon asked Hamby if she knew that she was pregnant, and failed to disclose

---

[3] The WNBA acknowledges that the Court accepts Hamby's factual allegations asserted in the Complaint as true solely for purposes of this motion.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

her pregnancy when she signed her contract extension with the Aces in June 2022. (*Id.* ¶¶ 37-43.) Hamby also alleges that Coach Hammon made additional comments to Hamby questioning Hamby's commitment to the Aces and her ability to be ready to return to play after giving birth. (*Id.* ¶¶ 41-42, 44-46.)

**D.   The Aces Trade Hamby To The Sparks, And Hamby Issues A Public Statement Regarding Her Experience Playing For The Aces.**

On January 21, 2023, the Aces traded Hamby to the Los Angeles Sparks. (*Id.* ¶¶ 48-49.) After learning that she had been traded, Hamby posted a message to her personal Instagram account regarding the Aces and its staff. (*Id.* ¶ 50.)  More specifically, in the Instagram post, Hamby alleged that she had been "lied to, bulled, manipulated, and discriminated against" by the Aces, and that the Aces had made offensive comments about her pregnancy and her commitment to the team. (*Id.*)  Hamby did not make any allegations regarding the WNBA or its staff. (*Id.*)

**E.   The WNBA Promptly Investigates Hamby's Allegations And Disciplines The Aces Based On Its Findings.**

On February 8, 2023, the WNBA announced that it had initiated an investigation into Hamby's claims. (*Id.* ¶ 52.)  The WNBA investigation included interviewing 33 people and reviewing numerous texts, emails and other documents. (*Id.* ¶ 56.)  On May 16, 2023, the WNBA concluded its investigation, and, with respect to Hamby's concerns raised regarding Coach Hammon, suspended Hammon for two games without pay for violating WNBA and team Respect in the Workplace policies. (*Id.*)

**F.   Hamby's Career With The WNBA Continues To Flourish.**

At present, Hamby remains employed by the Sparks. (*Id.* ¶¶ 54-55.)  Hamby's career with the Sparks and relationship with the WNBA have flourished since the WNBA's 2023 investigation.  In 2024, Hamby was given the honor of playing in the WNBA All-Star game, and in the same year, Hamby was chosen as a member of USA Basketball's Women's National Team for the 2024 Olympic Games in Paris, France. (*Id.* ¶¶ 23-24.)

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

**G.      Hamby's Marketing Agreement With The WNBA.**

In 2022, while employed by the Aces, Hamby and the WNBA entered into a Marketing Agreement. (*Id.* ¶ 65; **Exhibit A**.)[4]   Under the Agreement, Hamby, in the capacity of an independent contractor, agreed to provide marketing services to the WNBA, which included promoting the WNBA and its sponsors. (*See* Ex. A.)  The Marketing Agreement commenced on September 21, 2022, and under its express terms expired on "the tenth day following the last game of the WNBA Finals 2023," which was October 28, 2023. (*Id.* § 1.)

In the Marketing Agreement, both Hamby and the WNBA agreed that Hamby's performance pursuant thereto was "that of an independent contractor and that it [was her] responsibility to report as income any compensation received from the WNBA and to make the requisite tax filings and payments to the appropriate federal, state or local tax authority." (*Id.* § 9.)  Hamby was not provided any employee benefits under the Marketing Agreement. (*See id. generally*.)

Further, Hamby was permitted under the Marketing Agreement to enter into sponsorship agreements and nothing in the Marketing Agreement precluded or prohibited her from doing so. (*Id.* §§ 3(b), 3(c).)

Under the Agreement, Hamby agreed to make herself available for certain commitments for the WNBA, including creating content and/or making virtual or personal appearances. (*Id.* § 3(a).)  She was entitled to choose which commitments she could attend, and agreed to

---

[4] A true and correct copy of Hamby's Marketing Agreement with the WNBA is attached as **Exhibit A**.  The WNBA has redacted Hamby's personal email address and the amount of compensation that Hamby received under the Agreement for Hamby's privacy and because they are not pertinent to the WNBA's motion.   The Court may consider Hamby's Marketing Agreement for purposes of the WNBA's motion to dismiss because Hamby specifically refers to it in her Complaint, it is central to her retaliation claims against the WNBA, and no party questions its authenticity. *See Beverly Oak Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, 983 F.3d 435, 439 (9th Cir. 2020); *see also Thomson v. Caesars Holdings Inc.*, 661 F. Supp. 3d 1043, 1055 n.6 (D. Nev. 2023) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a motion to dismiss.") (internal citation and alteration omitted).

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

communicate to the WNBA any planned trips, vacations, or other preexisting commitments that would render her unavailable. (*Id.*)

Hamby was also expected to create and share social media posts and to engage with WNBA social media posts. (*Id.* §§ 3(e), 3(f).)  Hamby was given discretion over what to post and the specific content of each post. (*Id.*)

The WNBA had the right to terminate the Marketing Agreement, by written notice, at any time that it determined that Hamby was in breach of any material term or condition. (*Id.* § 6.)  Pursuant to its express terms, the Marketing Agreement expired on October 28, 2023, and was not subsequently extended. (*Id.* § 1; Compl. ¶ 65.)

### H.   Hamby Files A Charge Of Discrimination With The EEOC, And Subsequently Files This Action.

On September 23, 2023, Hamby filed a Charge of Discrimination with the EEOC against the Aces and the WNBA. (Compl. ¶ 5; **Exhibit B** (the "Charge").)  Shortly thereafter, on October 19, 2023, Hamby filed an Amended Charge of Discrimination.[5] (Compl. ¶ 6; **Exhibit C** (the "Amended Charge.")  In the Amended Charge, Hamby did not change any of her allegations regarding the WNBA.[6] (*See* Ex. B; Ex. C.)

As to the WNBA, in both the Charge and Amended Charge, Hamby alleged that the WNBA had not conducted an adequate investigation into her allegation of unfair treatment by the Aces, stating that "none of the then-current Las Vegas Aces players were interviewed as part of [the WNBA's] investigation, and [the WNBA] would not identify who, if anyone, was interviewed as part of th[e] investigation." (Ex. B, at 2; Ex. C, at 2.)  Hamby further alleged that she "d[id] not believe the [WNBA] investigation sought to uncover the truth about [her]

_____

[5] A true and correct copy of the Charge is attached as **Exhibit B** and a true and correct copy of the Amended Charge is attached as **Exhibit C**.  The WNBA has redacted Hamby's address, phone number, and date of birth from the Charge and Amended Charge for her privacy.  The Court may take judicial notice of the Charge and Amended Charge for purposes of the WNBA's motion to dismiss. *See Winterberg v. Univ. of Nev. Reno, Regents*, No. 3:19-cv-00747-MMD-CLB, 2020 WL 1916158, at *4 (D. Nev. Apr. 20, 2020).

[6] The WNBA assumes that Hamby filed a separate amended charge against the Aces, but has not received a copy of that charge.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

allegations that [she] was discriminated against for being pregnant, and [she] believe[s] [the WNBA] failed to properly investigate [her] claims as a form of retaliation for [her] public statements." (*Id.*)

Hamby did not amend her Charge or file a new Charge asserting any claims or allegations premised on the Marketing Agreement.

On August 12, 2024, Hamby initiated this action. (*See* Compl.)

## LEGAL ARGUMENT

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim: (1) a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and (2) a plaintiff must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 557.  Thus, the ultimate question is whether or not "[a] claim has facial plausibility, [*i.e.*] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As detailed herein, Hamby fails, as a matter of law, to state retaliation claims under both Title VII and NRS 613.340 and, thus, her claims should be dismissed in their entirety with prejudice.

**I.  Hamby's Retaliation Claims Under Title VII And NRS 613.340 Against The WNBA Should Be Dismissed Because Hamby Fails To Plausibly Allege That The WNBA Was Her Employer.**

Hamby's retaliation claims under Title VII and NRS 613.340 against the WNBA – based on both her claims that the WNBA failed to investigate and remedy her complaint and that the WNBA failed to extend the Marketing Agreement – should be dismissed because Hamby fails to

7

sufficiently allege that the WNBA was her employer, a required element to sustain retaliation claims under Title VII and NRS 613.340.[7]

"Under Title VII, an entity can be held liable for discrimination if it is an 'employer of the plaintiff." *U.S. Equal Emp. Opportunity Comm'n v. Global Horizons, Inc.*, 915 F.3d 631, 637 (9th Cir. 2019) (citing 42 U.S.C. § 2000e-2(a)). Similarly, Nevada's discrimination and retaliation statutes "appl[y] only to employers." *Nissenbaum v. NNH Cal Neva Servs. Co., LLC*, 983 F. Supp. 2d 1234, 1245 (D. Nev. 2013) (citing NRS 613.330.)[8]

Courts routinely grant motions to dismiss where a plaintiff fails to sufficiently and plausibly allege that the defendant employed her and instead merely relies on generalized allegations. *See Lane v. Skanska USA Inc.*, No. C22-926-RSM, 2023 WL 422886, at *2 (W.D. Wash. Jan. 26, 2023) (granting motion to dismiss Title VII claim where plaintiff did not plead that defendant "had any control over [her] employment, details or manner of her work"); *Gustafson v. U.S. Dep't of Energy*, No. 3:22-cv-00921-JR, 2023 WL 3688077, at *3 (D. Or. Sept. 28, 2023) (dismissing complaint where the plaintiff presented no facts establishing that the defendant was a joint employer of plaintiff), *report and recommendation adopted*, 2023 WL 3687389 (D. Or. May 25, 2023); *Bayne v. Bowles Hall Found.*, No. 21-cv-01959-JCS, 2021 WL 5205587, at *5-7 (N.D. Cal. Nov. 9, 2021) (dismissing defendant from Title VII claim where plaintiff "failed to allege facts sufficient to raise a plausible inference that [it was] her joint employer," and did "not allege any direct involvement by the [defendant] in hiring Plaintiff [or] evaluating her performance").

Indeed, mere weeks ago, this Court granted a motion to dismiss two defendants from a Fair Labor Standards Act claim because the plaintiff did not plausibly allege that they were her

---

[7] As discussed in detail in Section III.B, *infra*, Hamby was an independent contractor under the Marketing Agreement and, thus, regardless of any joint employer argument, is not covered by Title VII or NRS 613.640.

[8] Nevada's discrimination and retaliation laws follow Title VII in all material respects. *See Harrington v. Nevada, ex rel. Nev. Sys. Of Higher Educ.*, No. 2:18-cv-00009-APG-PAL, 2018 WL 4286169, at *3 (D. Nev. Sept. 6, 2018) (Gordon, J.) ("[D]iscrimination and retaliation claims under Nevada law are substantially similar to federal claims under Title VII").

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

employers. *Chapman v. Las Vegas Basketball L.P.*, No. 2:23-cv-00278-APG-MDC, 2024 WL 3823271, at *1, *3 (D. Nev. Aug. 14, 2024) (Gordon, J.) (finding that the plaintiff "had not alleged sufficient facts to make it plausible that [two defendants] were her employers" and "include[d] only conclusory allegations that [they] employed her, with no factual allegations to support these conclusions.").

Here, Hamby has not alleged plausible facts demonstrating a joint employer relationship between the Aces and the WNBA.  Hamby admits that her employment contract from 2018 through 2022 was with the Aces, a limited partnership that is separate and apart from the WNBA. (Compl. ¶¶ 13, 17-18, 28.)  Although Hamby alleges that the WNBA "jointly employed" her with the Aces because the Aces are "governed by the rules and regulations of the Defendant WNBA," (*Id.* ¶ 13), her bald allegation is insufficient to establish an employment relationship between Hamby and the WNBA.[9]

Accordingly, because Hamby fails to plausibly allege any facts establishing that the WNBA employed her as required under Title VII and NRS 613.340, her retaliation claims against the WNBA should be dismissed in their entirety.

---

[9] In a prior case involving athletic organizations, the Ninth Circuit held that the National Collegiate Athletic Association ("NCAA") and PAC-12, two organizations that regulate and operate student athletic programs, are not liable as "employers" of college football players under the Fair Labor Standards Act because they do not have the power to "hire and fire" student-athletes, and do not supervise their performance. *Dawson v. NCAA*, 932 F.3d 905, 908-910 (9th Cir. 2019).  Instead, the Court held that the NCAA and PAC-12 were "regulatory bodies, not employers of student-athletes." *Id.* at 911.  Similarly, here, the mere fact that the WNBA regulates teams like the Aces does not establish the requisite level of control such that the WNBA can be considered to be Hamby's employer. *See also Stewart v. Chick-Fil-A*, No. 19cv1780-CAB-BGS, 2020 WL 264578, at *2 (S.D. Cal. Jan. 17, 2020) (dismissing discrimination claims asserted against franchisor, holding that franchisor is not a joint employer of the plaintiff unless it "retain[s] or assume[s] a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees") (internal citation omitted); *Courtland v. GCEP-Surprise, LLC*, No. CV-12-00349-PHX-GMS, 2013 WL 3894981, at *3 (D. Ariz. July 29, 2013) ("A franchisor is not a joint employer unless it has significant control over the employment relationship.").

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

1
2

**II.** **Hamby's Retaliation Claims Premised On The WNBA's Alleged Failure to Conduct A Proper Investigation Or Issue Appropriate Remedies Fail As A Matter Of Law And Should Be Dismissed Because These Alleged Acts Are Not Adverse Employment Actions.**

3
4

Hamby's Title VII and NRS 613.340 retaliation claims premised on the WNBA's alleged failure to "properly investigate" or remedy her complaints fail as a matter of law.

5
6
7
8
9
10
11

"Title VII prohibits retaliation against an employee for opposing unlawful discrimination." *Hardage v. CBS Broad. Inc*., 427 F.3d 1177, 1188 (9th Cir. 2005) (citing 42 U.S.C. § 2000e-3(a)). To plausibly allege a *prima facie* case of retaliation, Hamby must allege that (1) she engaged in a protected activity; (2) the WNBA subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Id*; *see also Pope v. Motel 6*, 114 P.3d 277, 281-82 (Nev. 2005) (the analysis of a retaliation claim under NRS 613.340 is the same as Title VII).[10]

12
13
14
15
16
17
18
19
20
21
22
23

Courts routinely dismiss retaliation claims based on an employer's alleged failure to investigate an employee's discrimination claim, because "'[a]n employer's failure to investigate a complaint of discrimination [is not] considered an adverse employment action" and it "leaves an employee no worse off than before the complaint was filed." *Doe No. 1 v. Wynn Resorts, Ltd.*, No. 2:19-cv-01904-GMN-VCF, 2023 WL 1782439, at *16 (D. Nev. Feb. 3, 2023) (granting motion to dismiss Title VII and NRS 613.340 retaliation claims premised on the employer's "failure to or refusal to investigate" the plaintiff's claims because this did "not rise to the level of an adverse employment action") (internal citations omitted); *see also Kurdi v. Cal. Dep't of Transp.*, No. 1:22-cv-00729 JLT EPG, 2023 WL 267538, at *8 (E.D. Cal. Jan. 18, 2023) (granting motion to dismiss in relevant part, holding that "[t]he failure to investigate generally does not amount to an adverse action"); *McAllister v. Adecco USA Inc.*, No. 16-00447-DKW-KJM, 2018 WL 6112956, at *9 (D. Haw. Nov. 21, 2018) (granting summary judgment on retaliation claim,

24

25
26
27
28

---

[10] If Hamby plausibly alleges a *prima facie* case, courts apply the *McDonnell Douglas* burden shifting analysis, which requires the WNBA "to articulate a legitimate, nondiscriminatory reason for the adverse action." *Hardage*, 427 F.3d at 1188. After the WNBA articulates a legitimate, nondiscriminatory reason for the adverse action, the burden shifts back to Hamby to demonstrate the reason provided by the WNBA is pretextual. *Id*.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

holding that a failure to investigate the employee's complaints "cannot be an adverse employment action"), *aff'd*, 812 F. App'x 708 (Mem.) (9th Cir. 2020).

Similarly, courts routinely dismiss retaliation claims premised on an alleged failure to take remedial action in response to an employee's complaint because, again, this does not constitute an adverse employment action. *See Chesley v. City of Mesquite*, No. 2:21-cv-01946-ART-DJA, 2023 WL 5206925, at *5 (D. Nev. Aug. 14, 2023) (granting motion to dismiss retaliation claim based on employer's alleged refusal to "take any action" against plaintiff's alleged harasser); *Doe No. 1*, 2023 WL 1782439, at *16-17 (dismissing retaliation claim, holding that the defendant's "allegedly inadequate response" to discrimination complaint and "failure to implement a remedial scheme" did not constitute adverse employment actions, and therefore did not support a retaliation claim).

Here, Hamby's retaliation claims premised on the WNBA's alleged failure to investigate her complaint or implement remedial measures (*See* Compl. ¶¶ 57-62, 92-98) are ***precisely*** the types of actions that Courts in this District and Circuit have repeatedly rejected as legally insufficient to support a retaliation claim. *See, e.g., Doe No. 1*, *supra*, 2023 WL 1782439, at *16; *Kurdi*, *supra*, 2023 WL 267538, at *8; *Chesley*, *supra*, 2023 WL 5206925, at *5.

Accordingly, the portion of Hamby's retaliation claims, under both Title VII and NRS 613.340, alleging that the WNBA failed to investigate or remedy her complaints are insufficient as a matter of law and should be dismissed in their entirety with prejudice. *See Chesley*, 2023 WL 5206925, at *6 (dismissing retaliation claim premised on failure to take remedial action in response to employee's complaint, with prejudice, because amendment would be futile).

**III.** **Hamby's Retaliation Claims Under Both Title VII and NRS 613.340 Premised On The Marketing Agreement With The WNBA Should Be Dismissed.**

Hamby's retaliation claims under Title VII and NRS 613.340 premised on the WNBA's alleged failure to extend the term of the Marketing Agreement also fail and should be dismissed because: (i) Hamby did not raise this claim to the EEOC or NERC, and thus, failed to exhaust her administrative remedies; (ii) Hamby was an independent contractor under the Marketing

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

Agreement, and Title VII and NRS 613.340 do not apply to independent contractors; and (iii) Hamby cannot make out a *prima facie* case of retaliation under Title VII or NRS 613.340 because there is no temporal proximity or other evidence of causation between her complaint and the expiration and non-extension of the Marketing Agreement.

**A.  Hamby's Retaliation Claims Premised On The Marketing Agreement Should Be Dismissed Because Hamby Failed To Administratively Exhaust These Claims.**

A plaintiff is required to exhaust her administrative remedies by timely filing a charge with the EEOC or appropriate stage agency prior to asserting retaliation claims under Title VII. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *abrogated in part by Ford Bend Cnty., Texas v. Davis*, 587 U.S. 541, 552 (2019). Similarly, retaliation claims brought under NRS 613.340 must be exhausted before filing suit. *Pope*, 114 P.3d at 311 (citing NRS 613.420).[11]

Here, Hamby's Marketing Agreement expired on October 28, 2023. The Charge and Amended Charge were both filed before the Marketing Agreement expired and was not extended (*see* Ex. B; Ex. C) and, thus, any claims or allegations concerning the Marketing Agreement could not have been encompassed by either charge. Hamby did not amend the charge that she previously filed with the EEOC to assert a claim regarding the Marketing Agreement, nor did she file a new charge regarding the same.

Hamby cannot now file a charge in order to salvage her retaliation claims based on the Marketing Agreement as her time to do so has expired. A charge must be filed with the EEOC within 180 days of the alleged unlawful practice, or 300 days if a state or local agency enforces a law that prohibits discrimination on the same basis. *See* 42 U.S.C. § 2000e-5(e)(1). Similarly, a charge alleging retaliation must be filed with the NERC within 180 days of the alleged unlawful practice. *See* NRS 613.430. Thus, Hamby would have had to file a charge with the NERC or with the EEOC by April 25, 2024 and August 19, 2024, respectively. She did not do so, and any charge based on the Marketing Agreement would now be untimely.

---

[11] A motion to dismiss based on administrative exhaustion is properly considered pursuant to Fed. R. Civ. P. 12(b)(6). *See Fort Bend Cty*, 587 U.S. at 551-552.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

1       Accordingly, because Hamby failed to exhaust – and cannot now seek to exhaust – her

2 administrative remedies with respect to her Title VII and NRS 613.340 retaliation claims

3 premised on the Marketing Agreement, those claims should be dismissed with prejudice.

4     **B.**     **Hamby's Retaliation Claims Under Title VII and NRS 613.340 Based On The Marketing Agreement Should Be Dismissed Because Hamby Was An**

5             **Independent Contractor Under The Marketing Agreement And, Therefore, Is Not Covered Under Either Statute.**

6

7       Even if Hamby had exhausted the part of her Title VII and NRS 613.340 retaliation claims

8 premised on the Marketing Agreement, which she has not (*see supra* Section III.A), the part of

9 her retaliation claims related to the Marketing Agreement still fails as a matter of law because –

10 as expressly stated therein – Hamby was an independent contractor under the Marketing

11 Agreement, and, thus, she is not covered under either Title VII or NRS 613.340.

12       It is well-settled that "Title VII protects employees, but does not protect independent

13 contractors." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). Similarly, Nevada's

14 discrimination and retaliation laws do not apply to independent contractors. *See Byars v. W. Best*

15 *LLC*, No. 2:19-CV-1690 JCM (DJA), 2023 WL 6849321, at *5-6 (D. Nev. Oct. 16, 2023).[12] In

16 cases where the plaintiff's status as an independent contractor is evident from the pleadings,

17 courts will not hesitate to dismiss the complaint based on the plaintiff's clear inability to maintain

18 a suit under Title VII. *See Tyler v. Uber Techs., Inc.*, 487 F. Supp. 3d 27, 33 (D.D.C. 2020)

19 (granting motion to dismiss complaint that "fail[ed] to support a plausible claim that Uber

20 controlled the means and manner of [plaintiff's] work," and therefore did not plausibly claim that

21 Uber was his employer); *Ching Chin Chen v. Santa Monica Coll. Dist.*, No. 2:18-CV-07403-SJO-

---

22 [12] Courts considering whether an individual is an independent contractor for purposes of Title VII
23 evaluate "'the hiring party's right to control the manner and means by which the product is
accomplished.'" *Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1130 (9th Cir. 2020)
24 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Relevant factors for
consideration include: (i) the skill required; (ii) the source of the instrumentalities and tools; (iii)
25 the location of the work; (iv) the duration of the relationship between the parties; (v) whether the
hiring party has the right to assign additional projects to the hired party; (vi) the extent of the
26 hired party's discretion over when and how long to work; (vii) the method of payment; (viii) the
hired party's role in hiring and paying assistants; (ix) whether the work is part of the regular
27 business of the hiring party; (x) whether the hiring party is in business; (xi) the provision of
employee benefits; and (xii) the tax treatment of the hired party. *Id.*
28

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

E, 2019 WL 2896116, at *4 (C.D. Cal. Apr. 1, 2019) (dismissing complaint where plaintiff failed to "allege further essential facts tending to show that her relationship to Defendant is anything other than an independent contractor"); *Kahn v. Am. Heritage Life Ins. Co*., 324 F. Supp. 2d 652, 657 (E.D. Pa. 2004) (granting motion to dismiss, holding that "the plaintiff . . . has not met her burden of establishing that she was an employee of the defendant companies instead of an independent contractor.").

Here, the Marketing Agreement makes clear that Hamby was an independent contractor. First, the Agreement itself states that Hamby was an independent contractor, "a fact that [the Ninth Circuit] and other [courts] have found significant." *Henry*, 970 F.3d at 1131 (plaintiff was an independent contractor where the "contracts between [plaintiff] and [defendant] described him as an independent contractor"). Significantly, Hamby did not receive any employee benefits from the WNBA under the Marketing Agreement, such as medical insurance or retirement, further supporting that Hamby was an independent contractor. *Id.* (holding that this factor weighed in favor of determination that plaintiff was an independent contractor).

Under the express terms of the Marketing Agreement, Hamby was provided discretion over which events to attend, and was entitled to inform the WNBA of her planned trips, vacations, and other preexisting commitments that would render her unavailable, which supports an independent contractor relationship. (Ex. A § 3(a).) *See Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 946 (9th Cir. 2010) (holding plaintiff was independent contractor where she "decide[d] when and where to work" and "schedule[d] her own time off").

Hamby was also permitted discretion in deciding what to post to social media under the Agreement, further supporting an independent contractor relationship. (*See* Ex. A §§ 3(e), 3(f).) *See Henry*, 970 F.3d at 1131 (holding plaintiff was independent contractor where he had discretion in various aspects of his position and that "[e]mployees normally do not have this level of work freedom").

Additionally, Hamby was permitted to have other sponsorship agreements in addition to the Marketing Agreement, and nothing in the Marketing Agreement "operate[d] so as to make

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

[her] in breach of, or otherwise create a conflict with, such Other Sponsorship Agreements." (*Id.* § 3(b).)  *See Murray*, 613 F.3d at 964 (plaintiff was independent contractor where she was permitted to have other business arrangements in addition to her arrangement with the defendant.)

Lastly, the WNBA did not withhold taxes for the income that Hamby received under the Marketing Agreement, and Hamby was instead required to report her income and "make the requisite tax filings and payments to the appropriate federal, state or local tax authority." (Ex. A § 9.)  This further demonstrates an independent contractor relationship. *See Henry*, 970 F.3d at 1131 (plaintiff was independent contractor where the defendant "reported [plaintiff's] earnings to the IRS not as if [he] were a . . . employee, but as if he were an independent contractor").

Accordingly, because Hamby was an independent contractor under the Marketing Agreement, her retaliation claims under Title VII and NRS 613.340 premised on the Marketing Agreement should be dismissed with prejudice. *See Parker v. Acad. Advantage*, No. CV 14-00177 SJO (RZx), 2014 WL 12703741, at *4 (C.D. Cal. Aug. 6, 2014) (dismissing Title VII claim, with prejudice, where plaintiff was independent contractor, and, accordingly, "even if granted leave to amend, plaintiff could not sufficiently allege that she was Defendant's employee"), *aff'd sub nom. Parker v. Youth Policy Inst.*, 675 F. App'x 775 (Mem) (9th Cir. 2017).[13]

**C.    Hamby's Retaliation Claims Under Title VII and NRS 613.340 Based On The Marketing Agreement Should Be Dismissed Because Hamby Cannot Make Out A *Prima Facie* Case of Retaliation Given The Ten Month Gap Between Her Complaint And The Marketing Agreement Not Being Extended.**

Hamby's retaliation claims under Title VII and NRS 613.340 premised on the Marketing Agreement also fail because Hamby cannot establish a causal link between her complaint in

---

[13] To the extent that Hamby's retaliation claims premised on the Marketing Agreement are not dismissed and Hamby maintains that the WNBA was required to extend the Marketing Agreement pursuant to its terms, and/or that the WNBA violated the Marketing Agreement by not extending it, the WNBA maintains its right to move to compel arbitration of such a claim and assert arbitration as a defense to such a claim, and expressly does not waive its right to assert said defense.

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

January 2023 and the Marketing Agreement expiring pursuant to its express terms and not being extended in October 2023.

As noted above (*see supra* Section II), Hamby must establish a *prima facie* case of retaliation, which includes showing that a causal link exists between the protected activity and the adverse action. "[T]he plaintiff making a retaliation claim "must establish that [her] protected activity was a but-for cause of the alleged adverse action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

Hamby presents no evidence of retaliation in the Complaint. Indeed, Hamby does not allege any facts whatsoever to establish a causal link between her complaint in January 2023 and the non-extension of the Marketing Agreement in October 2023. Nor could she given that, as explained above, the Marketing Agreement simply expired pursuant to its express terms. (*See supra* Facts, Section G.) *See also Pratt v. Hawaii, Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1148 (D. Haw. 2018) (dismissing case where plaintiff "failed to present . . . evidence sufficient to raise the inference that his protected activity was the likely reason for the alleged" retaliation).

While "[c]ausation may be inferred based on the temporal proximity between the protected activity and the alleged retaliation, . . . the connection in time must be 'very close.'" *Cooper v. Dignity Health*, 438 F. Supp. 3d 1002, 1015 (D. Ariz. 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), *aff'd*, No. 20-15377, 2021 WL 3667225 (9th Cir. Aug. 18, 2021). "This Circuit has required temporal proximity of less than three months between the protected activity and the adverse employment action for the employee to establish causation based on timing alone." *Id.* (internal citation omitted).

As Hamby admits, she posted her complaint to Instagram on January 21, 2023, and the Marketing Agreement expired and was not extended on October 28, 2023, more than ten months later. (*See* Compl. ¶¶ 50, 65, 99; Ex. A.) As a matter of law, this significant time gap cannot establish a causal link between Hamby's complaint and the Marketing Agreement not being extended. Indeed, courts routinely find no temporal proximity where the gap between the alleged protected activity and alleged retaliatory act is shorter than the ten months here. *See Manatt v.*

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

*Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003) (inference of retaliation was "not possible" where "approximately nine months lapsed between the date of [plaintiff's] complaint and the [defendant's] alleged adverse decisions); *Pratt*, 308 F. Supp. 3d at 1148 (granting motion to dismiss retaliation claim where five months passed between complaint and alleged adverse action, holding the plaintiff "failed to present additional evidence sufficient to raise the inference that his protected activity was likely reason for the alleged [retaliatory acts]"); *Cooper*, 438 F. Supp. 3d at 1015 (five months gap was insufficient to create an inference of causation); *Kulukululualani v. Tori Richard, Ltd.*, No. 14-00028 KSC, 2015 WL 4041528, at *14 (D. Haw. June 30, 2015) ("Four months has been found to be too long to support an inference of retaliation.").

Accordingly, because Hamby cannot establish a causal link between her complaint and the Marketing Agreement not being extended, and, thus, cannot establish a *prima facie* case, her retaliation claims under Title VII and NRS 613.340 premised on the Marketing Agreement should be dismissed with prejudice.

### IV.    Hamby's Retaliation Claim Under NRS 613.340 Fails As A Matter Of Law And Should Be Dismissed Because Hamby Was Not Employed In Nevada At The Time Of The Events Giving Rise To Her Claim.

Hamby's retaliation claim under NRS 613.340 (based on both the alleged failure to investigate her complaint and issue appropriate remedies and the Marketing Agreement) should be dismissed in its entirety for the additional reason that Hamby was not employed in Nevada at the time of the events giving rise to her claim, and therefore is not covered by Nevada Law.

It is black-letter law that Nevada's discrimination and retaliation laws, including NRS 613.340 (the statute that Hamby brings suit under) "do not apply to . . . [a]ny employer with respect to employment outside this state." NRS 613.320(a).

Here, Hamby was not employed in Nevada during the time of the events giving rise to her claims against the WNBA. Indeed, Hamby was traded to the Los Angeles Sparks, which is based in California, on January 21, 2023, and, accordingly, became a California employee as of that date. (Compl. ¶ 49.) Hamby's claims against the WNBA relates to actions or inactions that the WNBA allegedly took while Hamby was employed by the Sparks in California. (*See id.* ¶¶ 57-

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

62, 65, 92-99.)   More specifically, the WNBA's investigation into Hamby's complaint commenced on February 8, 2023, and Hamby's Marketing Agreement expired on October 28, 2023, and was not extended thereafter. (Compl. ¶ 52; Ex. A § 1.)  The WNBA cannot be liable under Nevada law for these acts, as they all occurred when Hamby was employed in California.

Accordingly, Hamby's retaliation claims based on both the WNBA's investigation and the Marketing Agreement brought under NRS 613.340 should be dismissed in their entirety with prejudice.[14]

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's retaliation claims under Title VII and NRS 613.340 against the WNBA in their entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

DATED: September 11, 2024

/s/*Marian L. Massey, Esq.*
Ismail Amin, Esq. (9343)
Marian L. Massey, Esq. (14579)
**TALG, NV, LTD**
5852 S. Durango Dr., Suite 105
Las Vegas, Nevada 89113
Tel.: (702) 954-3861
Fax.: (949) 266-8406
iamin@talglaw.com
mmassey@talglaw.com


/s/ *Elise M. Bloom*
Elise M. Bloom (*pro hac vice pending*)
Michelle A. Annese (*pro hac vice pending*)
Jordan B. Glassberg (*pro hac vice pending*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036-8299
Tel.: (212) 969-3000
Fax: (212) 969-2900

---

[14] As demonstrated above, Hamby's Title VII and NRS retaliation claims each fail as a matter of law.  Accordingly, any amendment to the Complaint would be futile and would not salvage her claims against the WNBA. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

ebloom@proskauer.com
mannese@proskauer.com
jglassberg@proskauer.com

*Attorneys for Defendant WNBA, LLC*

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

1

## INDEX OF EXHIBITS

2

3

| Exhibit | Description |
|---------|-------------|
| Exhibit A | Marketing Agreement between Dearica Hamby and the WNBA, dated August 18, 2022 (the "Marketing Agreement") |
| Exhibit B | EEOC Charge of Discrimination filed by Dearica Hamby, dated September 22, 2023 (the "Charge") |
| Exhibit C | EEOC Charge of Discrimination filed by Dearica Hamby, dated October 19, 2023 (the "Amended Charge") |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**

1

### CERTIFICATE OF SERVICE

2
    I hereby certify that on September 11, 2024, I electronically filed a true and correct copy

3
of **DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY**

4
**DEMAND** with the Clerk of the Court using the CM/ECF system, which sent notification to the

5
following counsel of record in this matter:

6
**Artur Davis, Esq**.

7
HKM Employment Attorneys LLP
2024 3rd Avenue N, Suite 212

8
Birmingham, AL 35203
Tel: 205-881-0935
adavis@hkm.com

9

10
**Dana Sniegocki, Esq.**
HKM Employment Attorneys LLP
101 Convention Center Drive, Suite 600

11
Las Vegas, NV 89109
Tel.: 702-623-7279

12
dsniegocki@hkm.com

13
**Erin S Norgaard, Esq.**
HKM Employment Attorneys LLP

14
600 Stewart Street
Suite 901

15
Seattle, WA 98101
Tel.: 206-838-2504

16
enorgaard@hkm.com

17

18
*Attorneys for Plaintiff Dearica Hamby*

19
                                        */s/ Kavita Narh*_____

20
                                        An employee of TALG, NV, Ltd.

21

22

23

24

25

26

27

28

**DEFENDANT WNBA, LLC'S MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND**