# EXHIBIT A

Proposed First Amended Complaint

1  **DANA SNIEGOCKI, ESQ.**
   Nevada Bar No. 11715
2  E-mail: dsniegocki@hkm.com
   **HKM EMPLOYMENT ATTORNEYS LLP**
3  101 Convention Center Drive, Suite 600
   Las Vegas, NV 89109
4  Tel: (702) 577-3029
   Fax: (702) 577-3029
5

   **ERIN S. NORGAARD, ESQ.**
6  Washington State Bar No. 32789
   E-mail: enorgaard@hkm.com
7  **HKM EMPLOYMENT ATTORNEYS LLP**
   600 Stewart Street, Suite 901
8  Seattle, WA 98101
   Tel: (806) 826-5360
9  Fax: (806) 826-5360
   *Admitted Pro Hac Vice*
10

   **ARTUR DAVIS, ESQ.**
11 Alabama Bar No. 3672D-56A
   Email: adavis@hkm.com
12 **HKM EMPLOYMENT ATTORNEYS LLP**
   2024 3rd Avenue North, Suite 212
13 Birmingham, AL 35203
   Tel: (404) 220-9165
14 Fax: (404) 220-9165
   *Admitted Pro Hac Vice*
15

16 *Attorneys for Plaintiff*

17
                    **UNITED STATES DISTRICT COURT**
18                        **DISTRICT OF NEVADA**

19 | DEARICA HAMBY, an Individual,
20 |                                          **CASE NO.: 2:24-cv-01474-APG-DJA**
   |          Plaintiff,
21 |
   | vs.                                      **[PROPOSED] FIRST AMENDED**
22 |                                          **COMPLAINT AND JURY DEMAND**
23 | WNBA, LLC and LAS VEGAS
   | BASKETBALL L.P. d/b/a LAS VEGAS
24 | ACES,
25 |          Defendant.

26

27    The Plaintiff DEARICA HAMBY (hereinafter "Hamby" or "Plaintiff") by and

28 through her attorneys of record, the law firm of HKM Employment Attorneys LLP, hereby

complains and alleges as follows:

## JURISDICTION

1. This is an action for damages arising under Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §2000e to 2000e-17; NRS Chapter 613; and for unlawful retaliation under the above statutes.

2. This Court has primary jurisdiction over claims set forth herein pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §1343(a) (4) (civil rights action) and 42 U.S.C. §2000e-5(f) (3) (unlawful discrimination and retaliation in employment). Additionally, this Court has supplemental jurisdiction over any state law claims pled herein pursuant to 28 U.S.C. §1367.

3. Upon information and belief and unless otherwise indicated, all material allegations relative to the named defendants contained in this Complaint occurred in the State of Nevada, Clark County. Therefore, venue properly lies in the southern division of the United States Court for the District of Nevada pursuant to 28 U.S.C. §1391(b)(2).

4. At all relevant times, Defendants were engaged in interstate commerce, and each employed 20 or more employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year and are therefore subject to the provisions of the statutes outlined herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDY

5. On or about September 23, 2023, Plaintiff filed a Charge of Discrimination against the Defendants named in this action with the Equal Employment Opportunity Commission ("EEOC").

6. On or about October 19, 2023, Plaintiff filed an Amended Charge of Discrimination against the Defendants named in this action with the EEOC.

7. On or about May 23, 2024, Plaintiff received the "Notice of Right to Sue" from the EEOC.

8. Fewer than 90 days have passed since the date of mailing of the "Notice of Right to Sue." This action is timely filed pursuant to 42 U.S.C. § 2000e-5(f).

9. Prior to filing this action, Plaintiff exhausted the administrative remedy on all claims pled hereunder.

**PARTIES**

10. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

11. Plaintiff is a citizen of the State of Nevada and a resident of Clark County, Nevada and an active professional basketball player in the WNBA.

12. At all relevant times, Defendant WNBA, LLC (hereinafter "Defendant WNBA" or "WNBA") was a foreign limited liability company authorized to conduct business in the State of Nevada. Defendant WNBA operates a professional women's basketball league in the United States.

13. At all relevant times, Defendant LAS VEGAS BASKETBALL L.P. (hereinafter "Defendant Las Vegas Aces" or "the Aces") was a foreign limited partnership authorized to conduct business in the State of Nevada. Defendant Las Vegas Aces is a franchise operation governed by the rules and regulations of the Defendant WNBA, thereby making the Defendant WNBA and the Defendant Las Vegas Aces joint employers of Plaintiff Hamby.

14. WNBA has entered a collective bargaining agreement ("CBA") that creates contractual rights for the league's athletes that transcend team lines, and the CBA is binding on each privately owned franchise that is a WNBA team.

15. The features of the CBA include a universal rule structure that regulates for all teams the terms of the free agent system, minimum and maximum permissible compensation, and respective tiers of compensation for players who perform at certain levels of achievement. In addition, the CBA augments team bargained individual contracts with the availability of performance based bonuses and marketing deals that are paid by the league; and the provision of league based benefits such as health insurance, retirement plans; and childcare.

16. The CBA affects every player's employment status through the following reserved

authority:

a. The power to impose discipline on players with fines and suspensions, up to and including authority to ban a player for egregious misconduct;

b. Control over the annual draft process by which teams supplement the roster with college talent;

c. Provision of health insurance and retirement benefits through league purchased plans;

d. Ultimate approval authority over trades, including the express right to rescind trades; and

e. Discretion to investigate discrete employment acts that violate league adopted rules.

## GENERAL ALLEGATIONS

17. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

18. Two-time WNBA Sixth Woman of the Year, three-time WNBA All Star, WNBA champion, United States bronze medal-winning Olympian, and mother of two children, Plaintiff Dearica Hamby is a veteran professional basketball player in the country's preeminent women's professional basketball league, the WNBA.

19. Hamby first began playing professional basketball with Defendant WNBA in 2015 when she was selected sixth overall by the San Antonio Stars in the first round of the WNBA draft after a successful collegiate career at Wake Forest University.

20. In 2018, the San Antonio Stars were purchased by the Defendant Las Vegas Basketball L.P. and began operating under the WNBA team name, the Las Vegas Aces.

21. From 2018 through 2022, Plaintiff Hamby played an integral role in the Las Vegas Aces organization's quest to secure its first WNBA championship.

22. In 2019, Plaintiff Hamby was awarded the coveted title of WNBA Sixth Woman of the Year.

23. The next year in 2020, Plaintiff Hamby was again awarded the title of WNBA Sixth

Woman of the Year.

24. In 2021, Plaintiff Hamby was selected as one of only 22 players out of a possible 144 in the league to play in the WNBA All-Star game.

25. In 2022, Plaintiff Hamby was again selected to play in the WNBA All-Star game.

26. In 2024, Plaintiff Hamby was again selected to play in the WNBA All-Star game.

27. In 2024, Plaintiff Hamby was also selected to be a member of USA Basketball's 3x3 Women's National Team for the 2024 Olympic Games in Paris, France wherein she won a bronze medal.

28. The WNBA preseason begins roughly at the end of April each year.

29. The WNBA regular season runs from roughly the second week in May each year through roughly the second week in August each year.

30. The WNBA postseason begins roughly in the second week of August each year and runs through roughly the second week of September each year.

31. On or about June 28, 2022, in the midst of the WNBA regular season, Plaintiff Hamby signed a two-year contract extension to continue playing professional basketball with Defendant Las Vegas Aces. This contract was for the purposes of securing Hamby as a player for the Las Vegas Aces for the 2023 playing season and the 2024 playing season, with such contract set to expire on May 15, 2025.

32. In an effort to deter Hamby from entering the free agency market, where she would have been one of the more compelling available players, Defendant Las Vegas Aces offered her a two-year contract extension. In connection with this offer, the Defendant Las Vegas Aces promised Hamby certain benefits and inducements outside of the contract to entice Hamby to sign. These benefits included, but were not limited to, an agreement by the Las Vegas Aces to cover the private school tuition costs for Hamby's daughter, Amaya, in the form of a "donation" to Amaya's school. Additionally, Defendant Las Vegas Aces agreed to allow Hamby to occupy team-provided housing accommodations, though Hamby also had a separate residence in Nevada. This would allow Hamby's family to assist with childcare for Amaya while Plaintiff Hamby was traveling for road

games.

33. Plaintiff Hamby signed the contract extension with the interest and desire to continue her playing career with the Las Vegas Aces organization and solidify her status as a franchise player.

34. Approximately three weeks later, on or about July 18, 2022, Plaintiff Hamby discovered for the first time that she was pregnant with her second child.

35. On or about August 6, 2022, Plaintiff Hamby informed the head coach of Defendant Las Vegas Aces, Becky Hammon, and other coaching and training staff, of her pregnancy.

36. On or about August 8, 2022, Hamby's pregnancy was confirmed at her first doctor's visit.

37. Hamby thereafter notified the General Manager of Defendant Las Vegas Aces, Natalie Williams, of her pregnancy.

38. On September 18, 2022, the Las Vegas Aces won the first WNBA championship in franchise history with the help of Plaintiff Hamby, who was part of the starting five in 32 of 34 regular season games in 2022.

39. On September 20, 2022, while on stage at the Las Vegas Aces championship victory parade in Las Vegas, Nevada, Plaintiff Hamby publicly announced to fans and media that she was pregnant.

40. After making her pregnancy public, Plaintiff Hamby experienced notable changes in the way she was treated by Las Vegas Aces staff.

41. For example, when Amaya's school tuition became due in September 2022 and Plaintiff Hamby inquired with General Manager Williams and Las Vegas Aces President, Nikki Fargas, about it, Williams and Fargas informed Plaintiff Hamby that they were "working on it," but provided no date by which the "donation" for Amaya's tuition would be made.

42. On October 1, 2022, General Manager Williams informed Plaintiff Hamby that she must vacate the team-provided housing. No reason was given to Plaintiff Hamby by Williams

1     for this decision to remove Hamby from team-provided housing.

2   43. In November 2022, Plaintiff Hamby again followed up with Williams and Fargas
3     regarding Defendant Las Vegas Aces' promise to cover tuition costs for Hamby's
4     daughter Amaya. Plaintiff Hamby was told they were "still figuring it out," but she was
5     given no date by which the tuition payment would be paid.

6   44. On or about January 15, 2023, during a phone call between head coach Hammon and
7     Plaintiff Hamby, Hammon asked Hamby whether she planned her pregnancy. When
8     Hamby responded that she did not, Hammon told Hamby that she was not taking proper
9     precautions not to get pregnant.

10  45. Also during that phone call, Hammon questioned Hamby's commitment and dedication
11     to the team. Hammon told Plaintiff Hamby that she was a "question mark." Hammon
12     further stated that the Las Vegas Aces "needed bodies," and that Hamby would not be
13     ready to play in time for the start of the next season. In response, Hamby assured
14     Hammon that she was committed to the team, would be giving birth during the off-
15     season, and anticipated being fully ready to play by the start of the preseason in April
16     2023.

17  46. Also during that phone call, Hammon accused Plaintiff Hamby of signing her contract
18     extension knowingly pregnant, a false accusation which Hamby denied.

19  47. Also during that phone call, Hammon informed Hamby that it was believed by the Las
20     Vegas Aces staff that Hamby would get pregnant again for a third time.

21  48. Also during that phone call, Hammon accused Hamby of not taking her off-season
22     workouts seriously, another false allegation. Though seven months pregnant at the time,
23     Hamby was working out regularly as permitted by her medical doctors including playing
24     basketball and doing regular Pilates and calisthenics workouts.

25  49. Also during that phone call, Hammon told Hamby that Hamby did not hold up her end
26     of the bargain and that no one expected her to get pregnant again, implying that by
27     signing the contract extension, Hamby implicitly agreed she would not get pregnant
28     during the two-year extension period.

1  50. Plaintiff Hamby then stated two times to Hammon, "You're trading me because I'm pregnant?" Hammon responded to Plaintiff Hamby's inquiry by stating, "what do you want me to do?" Hammon did not deny the accusation that Hamby was being traded because she was pregnant.

51. On or about January 16, 2023, Hammon called Plaintiff Hamby and told her, "Your time with the Aces is up" and that it is best for Hamby's career if she moves on. Hammon told Hamby that Hamby could "pick a place like Los Angeles or Atlanta," or that Hammon could trade her to either the Connecticut Sun or the Indiana Fever.

52. On January 21, 2023, Defendant Las Vegas Aces issued a public announcement that Plaintiff Dearica Hamby had been traded to the Los Angeles Sparks.

53. Also on January 21, 2023, Plaintiff Hamby issued the following public statement via social media:

> With that being said.. I am heartbroken.
> Being traded is a part of the business. Being lied to, bullied, manipulated, and discriminated against is not. I have had my character and work ethic attacked. I was promised things to entice me to sign my contract extension that were not followed through on. I was accused of signing my extension knowingly pregnant. This is false. I was told that I was "a question mark" and that it was said that I said I would "get pregnant again" and there was a concern for my level of commitment to the team. I was told that "I didn't hold up my end of the bargain" (Because "no one expected me to get pregnant in the next two years"). Did the team expect me to promise not to get pregnant in exchange for the contract extension? I was asked if I planned my pregnancy. When I responded, "no," I was then told that I "was not taking precautions to not get pregnant." I was being traded because "I wouldn't be ready and we need bodies". I planned to play this season, and I have expressed my desire to play this season. I have pushed myself throughout my entire pregnancy and have continued to work out (basketball included) on my own and with team staff – even on days where it was uncomfortable to walk, only to be inaccurately told that "I was not taking my workouts seriously." And "yeah we just don't see that" (with my return). I remained transparent with everyone within the organization, and yet, my honesty was met with coldness, disrespect, and disregard from members of management. I have only put this organization first since day one before any of them were here. "You're getting moved regardless and It's best for your career that you move on from the Aces". The unprofessional and unethical way that I have been treated has been traumatizing. To be treated this way by an organization, BY WOMEN who are mothers, who have claimed to "be in these shoes," who preach family, chemistry, and women's empowerment is disappointing and leaves me sick to my stomach. We fought for provisions that would finally support and protect player parents. This cannot now be used against me.

54. On or about January 23, 2023, the Executive Director of the WNBA Player's Association, Terri Jackson, on behalf of Plaintiff Hamby, sent an e-mail to the Defendant WNBA's General Counsel, Jamin Dershowitz, requesting an investigation

Page **8** of **16**

1     by the WNBA into the allegations made public by Plaintiff Hamby on January 21, 2023.

2    55. On or about February 8, 2023, via its official X (formerly Twitter) account, the Defendant Las Vegas Aces announced that the Defendant WNBA launched a formal investigation into the allegations raised by Plaintiff Hamby in her January 21, 2023, social media posts.

56. On March 6, 2023, Plaintiff gave birth to her son, Legend.

57. On or about April 28, 2023, Plaintiff timely reported to training camp for the Los Angeles Sparks and began preseason play. Plaintiff did not miss any required time with the Los Angeles Sparks as a result of her pregnancy.

58. Plaintiff went on to play in all 40 regular season games for the Los Angeles Sparks, not missing a single game in the season.

59. On May 16, 2023, the Defendant WNBA publicly announced it concluded its investigation of the Defendant Las Vegas Aces, by issuing the following statement:

**WNBA Imposes Penalties on Las Vegas Aces After Investigation**

**NEW YORK, May 16, 2023** – The WNBA announced today that it has rescinded the Las Vegas Aces' 2025 first-round draft pick for violating league rules regarding impermissible player benefits and suspended Las Vegas head coach Becky Hammon for two games without pay for violating league and team Respect in the Workplace policies.

Due to a prior trade, Las Vegas does not have a 2024 first-round draft pick.

The team violation involved promises of impermissible benefits in connection with negotiations for an extension of then Aces player Dearica Hamby's player contract. The Respect in the Workplace violation was related to comments made by Hammon to Hamby in connection with Hamby's recent pregnancy.

After a complaint by Hamby on January 21, 2023, alleging misconduct by the Aces, the league began an investigation. The investigation included interviews with 33 people and a review of numerous texts, emails and other documents. During the course of the investigation, several individuals raised additional concerns about the conduct of the Aces during the most recent free agency period. The investigation was not able to substantiate any of those additional concerns.

"It is critical that we uphold the values of integrity and fairness, which create a level playing field for our teams," said WNBA Commissioner Cathy Engelbert. "The Aces failed to adhere to league rules and regulations and have been disciplined accordingly. We are also disheartened by the violation of our Respect in the Workplace policies and remain committed to ensuring that enhanced training is conducted and standards are followed across all WNBA teams."

60. While the Defendant WNBA rescinded the Las Vegas Aces' 2025 first-round draft pick "for violating league rules regarding impermissible player benefits" and "suspended Las Vegas head Coach Becky Hammon for two games without pay for violating league and team Respect in the Workplace policies," the Defendant WNBA provided no meaningful redress to Plaintiff Hamby for the harm she suffered as the victim of the

violations found by the WNBA, such as disapproving her trade to the Los Angeles Sparks, though it was empowered to do so.

61. The Defendant WNBA took no steps to correct or address a clear-cut violation of Plaintiff's Hamby's rights under federal and state anti-discrimination law.

62. The Defendant WNBA did not interview any Las Vegas Aces players in connection with its 2023 investigation of the Defendant Las Vegas Aces and head coach Hammon. Had players been interviewed, they could have corroborated key conversations between Plaintiff and Defendant Las Vegas Aces and other relevant facts as alleged by Plaintiff Hamby.

63. The Defendant WNBA did not impose adequate punishment or consequences on the Defendant Las Vegas Aces for the discriminatory treatment experienced by Plaintiff Hamby nor for her unlawful trade to the Los Angeles Sparks such that it would deter any future similar conduct.

64. The Defendant WNBA also did not impose adequate punishment or consequences on head coach Becky Hammon for her discriminatory treatment of Plaintiff Hamby.

65. The Defendant WNBA offered Plaintiff Hamby no remedy that would inure to her benefit for the violations it found.

66. Plaintiff Hamby's trade to a less competitive team resulted in a loss of reputational prestige and brand value typically associated with being part of a two-time WNBA champion franchise. It also resulted in a loss of marketing and/or endorsement opportunities in the Las Vegas sports market that were not available to her in the Los Angeles sports market, a far more saturated endorsement market.

67. After Plaintiff engaged in protected activity by publicly complaining about her discriminatory trade, the Defendant Las Vegas Aces engaged in a number of retaliatory acts against the Plaintiff, including but not limited to:
    a. Issuing a directive to Las Vegas Aces players and staff to cease communication with Plaintiff;
    b. Making a false public statement, through its General Manager, Natalie Williams,

       on a radio show that implied Plaintiff, and the Las Vegas Aces, were aware of Plaintiff's pregnancy since June 2022;

    c. Attempting to wrongfully obtain confidential medical records from Plaintiff after informing her she was no longer a member of the Las Vegas Aces;

    d. Refusing to extend an invitation to Plaintiff to attend a White House ceremony with Vice President Kamala Harris to commemorate the Las Vegas Aces' first WNBA championship; and

    e. Giving a directive to video personnel at a September 17, 2023, Las Vegas Aces playoff game prohibiting the showing of Plaintiff's daughter, Amaya, on the arena's video screen, despite the fact that Plaintiff's daughter was often previously shown on such video screen and was a fan favorite, then immediately cutting away from a shot of Plaintiff's daughter when she was inadvertently shown on the arena's video screen.

68. At the time Plaintiff engaged in protected activity by complaining about unlawful workplace discrimination, Plaintiff was under a thirteen month WNBA League Marketing Contract to perform certain marketing work for the Defendant WNBA in exchange for compensation outside of her player contract. After engaging in protected activity, the Defendant WNBA did not extend Plaintiff Hamby's League Marketing Contract.

**FIRST CAUSE OF ACTION**

**(Discrimination Based on Sex (Pregnancy) in Violation of Title VII, 42 U.S.C. §2000e-2(m) to 2000e(k) and NRS 613.330)**
**(Defendant Las Vegas Aces)**

69. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

70. Plaintiff is a member of the class of persons protected by state and federal statutes prohibiting discrimination based on sex (pregnancy).

71. Defendant is an employer is subject to Title VII, 42 U.S.C. § 2000e et. seq. as amended and NRS 613.310 and thus, has a legal obligation to provide Plaintiff a fair non-discriminatory work environment and employment opportunities.

72. The Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., at subpart (k), prohibits discrimination in employment because of sex and on the basis sex, which is further defined as on the basis of pregnancy, childbirth, or related medical conditions.

73. Defendant's decision to trade Plaintiff was motivated by Plaintiff's announcement that she was pregnant after signing her contract extension.

74. Defendant's trade of Plaintiff Hamby caused her some harm, including lost promotional and/or endorsement opportunities, relocation to a more unfavorable tax environment, and the denial of a chance to participate for a back-to-back WNBA championship.

75. Plaintiff's trade constituted a change in the terms and conditions of her employment for which she suffered harm, including but not limited to, additional tax burdens, loss of marketing, endorsement, and sponsorship opportunities, reputational harm from excluding her from a championship team, and other financial and monetary losses.

76. Plaintiff was embarrassed, humiliated, angered, and discouraged by the discriminatory actions taken against her.

77. Plaintiff suffered compensable emotional harm including, but not limited to, mental anguish, loss of enjoyment of life, emotional distress, and anxiety resulting from this unlawful discrimination by her employer.

78. Plaintiff is entitled to be fully compensated for her emotional disturbance by being forced to endure this discrimination.

79. Pursuant to the 1991 Amendments to Title VII, Plaintiff is entitled to recover punitive damages for Defendant's intentional violations of federal and state civil rights laws.

80. Defendant engaged in such actions with malice or reckless indifference to Plaintiff's federally protected rights, and Defendant must pay Plaintiff an additional amount in punitive damages.

81. Therefore, Plaintiff is entitled to recover damages for the sake of example, to deter other employers from engaging in such conduct, and by way of punishing the Defendant in an amount deemed sufficient by the jury.

82. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred as a result of these violations of Title VII and therefore, she is entitled to recover reasonable attorney's fees against Defendants pursuant to 42 U.S.C. §2000e-5(k) and NRS 613.432.

## SECOND CAUSE OF ACTION

**(Retaliation under 42 U.S.C. § 2000e-3(a) and NRS 613.340)**
**(Defendant Las Vegas Aces)**

83. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

84. In violation of 42 U.S.C § 2000e-3(a) and NRS 613.340, Defendant retaliated against Plaintiff after she complained of acts which she reasonably believed were discriminatory. By way of non-exhaustive examples, Defendant retaliated against Plaintiff by:

    a. Issuing a directive to Las Vegas Aces players and staff to cease communication with Plaintiff;

    b. Making a false public statement, through its General Manager, Natalie Williams, on a radio show that implied Plaintiff, and the Las Vegas Aces, were aware of Plaintiff's pregnant status since June 2022;

    c. Attempting to wrongfully obtain confidential medical records from Plaintiff after informing her she was no longer a member of the Las Vegas Aces;

    d. Refusing to extend an invite to Plaintiff to attend a White House ceremony with Vice President Kamala Harris to commemorate the Las Vegas Aces' first

WNBA championship; and

e. Giving a directive to video personnel at a September 17, 2023, Las Vegas Aces playoff game prohibiting the showing of Plaintiff's daughter, Amaya, on the Arena's video screen, despite the fact that Plaintiff's daughter was often shown on such video screen and was a fan favorite, then immediately cutting away from a shot of Plaintiff's daughter when she was inadvertently shown on the arena's video screen.

85. These acts were done in an effort to punish Plaintiff Hamby and would have dissuaded a reasonable employee from engaging in protected activity.

86. Plaintiff may be unaware of additional detrimental acts constituting retaliation after her trade.

87. The actions taken by Defendant were done in response to plaintiff's protected complaint of discrimination, were designed to dissuade a reasonable worker from complaining about discrimination or otherwise engaging in protected activity, and such conduct by Defendant constitutes illegal retaliation, prohibited by federal and state statutes.

88. Due to its illegal actions, Defendant must pay damages in an amount to be determined at trial for back pay, front pay, lost benefits, and compensatory damages for emotional pain, suffering, inconvenience, mental anguish and loss of enjoyment of life.

89. Defendant engaged in such actions with malice or reckless indifference to Plaintiff's federally protected rights, and Defendant must pay Plaintiff an additional amount in punitive damages for the sake of example and by way of punishment in an amount deemed sufficient by the jury.

90. Plaintiff has had to obtain the services of an attorney to protect her rights and secure compensation for the damages incurred when Defendant violated Title VII, and therefore, she is entitled to recover reasonable attorney's fees against Defendant pursuant to Title VII.

///

///

# THIRD CAUSE OF ACTION

### (Retaliation under 42 U.S.C. § 2000e-3(a) and NRS 613.340)
### (Defendant WNBA)

91. Plaintiff incorporates all the allegations in the preceding paragraphs as though fully set forth herein.

92. Defendant is an employer is subject to Title VII, 42 U.S.C. § 2000e et. seq. as amended and NRS 613.310 and thus, has a legal obligation to provide Plaintiff a fair non-discriminatory work environment and employment opportunities.

93. Plaintiff engaged in protected activity on January 21, 2023 by publicly complaining about her discriminatory treatment by Defendant Las Vegas Aces.

94. Plaintiff engaged in protected activity again on January 23, 2023 by complaining directly to the Defendant WNBA and requesting an investigation.

95. In violation of 42 U.S.C § 2000e-3 and NRS 613.340, Defendant WNBA retaliated against Plaintiff for her protected activity on January 21, 2023 of publicly posting her workplace complaints to social media by failing to properly investigate Plaintiff's claims of unlawful workplace discrimination based upon her pregnancy.

96. Despite its findings that "Respect in the Workplace" violations occurred in connection with Plaintiff's treatment by the Defendant Las Vegas Aces and head coach Becky Hammon, and her resulting trade, the Defendant WNBA provided no meaningful redress to Plaintiff Hamby for the harm she suffered as the victim of the violations found by the WNBA, such as disapproving her trade to the Los Angeles Sparks, though it was empowered to do so.

97. Defendant WNBA failed to properly investigate Plaintiff's claims of illegal workplace discrimination and issue appropriate remedies.

98. Defendant WNBA failed to interview key witnesses in connection with its investigation.

99. Defendant WNBA failed to take any steps to deter future wrongful or illegal conduct by the Defendant Las Vegas Aces or head coach Becky Hammon.

///

1     **WHEREFORE,** Plaintiff prays this court for:

2        a. A jury trial on all appropriate claims and to enter judgment in favor of the

3            Plaintiff by:

4              i. Awarding Plaintiff an amount sufficient to fully compensate her

5               (including tax consequences) for all economic losses of any kind, and

6               otherwise make her whole in accordance with the law;

7             ii. An award of compensatory and punitive damages to be determined at

8               trial;

9            iii. An award of attorney's fees and costs; and

10            iv. Any other relief the court deems just and proper.

11 Dated: October 16, 2024.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS, LLP**

By:  /s/ *Artur Davis*
**Dana Sniegocki, Esq.**
Nevada Bar No. 11715
E-mail: dsniegocki@hkm.com
**Erin S. Norgaard, Esq.**
Washington State Bar No. 32789
*Admitted Pro Hac Vice*)
E-mail: enorgaard@hkm.com
**Artur Davis, Esq**.
Alabama Bar No. 3672D-56A
*Admitted Pro Hac Vice*)
Email: adavis@hkm.com
101 Convention Center Dr., Suite 600
Las Vegas, Nevada 89109
Tel: (702) 577-3029
Fax: (702) 577-3029
*Attorneys for Plaintiff*