1 | **TALG, NV, LTD**
Ismail Amin, Esq. (9343)
2 | Marian L. Massey, Esq. (14579)
5852 S. Durango Dr., Suite 105
3 | Las Vegas, Nevada 89113
Tel.: (702) 954-3861
4 | Fax.: (949) 266-8406
iamin@talglaw.com
5 | mmassey@talglaw.com

6 | **PROSKAUER ROSE LLP**
Elise M. Bloom (admitted *pro hac vice*)
7 | Michelle A. Annese (admitted *pro hac vice*)
Jordan B. Glassberg (admitted *pro hac vice*)
8 | Eleven Times Square
New York, New York 10036-8299
9 | Tel.: (212) 969-3000
Fax: (212) 969-2900
10 | ebloom@proskauer.com
mannese@proskauer.com
11 | jglassberg@proskauer.com

12 | *Attorneys for Defendant WNBA, LLC*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| DEARICA HAMBY, an Individual,<br><br>Plaintiff,<br><br>vs.<br><br>WNBA, LLC and LAS VEGAS BASKETBALL L.P. *doing business as* LAS VEGAS ACES,<br><br>Defendants. | Case No. 2:24-cv-01474-APG-DJA<br><br>**DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)** |

Defendant WNBA, LLC (the "WNBA"), by and through its undersigned counsel, respectfully submits the following reply memorandum of law in further support of its motion to dismiss Plaintiff Dearica Hamby's Complaint and Jury Demand (*see* ECF No. 14) ("Mot.").

Hamby dedicates a significant portion of her opposition brief ("Opp") (ECF No. 31) to arguing that she has sufficiently pled a joint employer relationship between the WNBA and the Aces. As detailed below, she has failed to do so. However, even if Hamby had demonstrated a joint employer relationship, her retaliation claims under both Title VII and NRS 613.340 against the WNBA fail in their entirety for multiple independent reasons. Thus, even if the Court were to conclude that the WNBA was Hamby's joint employer or that there were insufficient facts to make this determination at this stage, it would still not salvage Hamby's claims against the WNBA or alter the disposition of the WNBA's motion to dismiss. Accordingly, and for the reasons that follow, Hamby's retaliation claims against the WNBA should be dismissed in their entirety with prejudice.[1]

## I. Neither Hamby's Opposition Brief Nor Her Proposed Amended Complaint Plausibly Allege That The WNBA Employed Her.

To demonstrate a joint employer relationship, Hamby must allege facts sufficient to establish that the WNBA "control[led] . . . the details of [her] work." *EEOC v. Global Horizons, Inc.*, 915 F.3d 631, 637-638 (9th Cir. 2019).

Hamby fails to do so. In her opposition brief, Hamby concedes that the only allegations in the operative Complaint concerning her relationship with the WNBA are: (i) the generalized allegation that the Aces "is a franchise operation governed by the rules and regulations of the [WNBA], thereby making [the WNBA and the Aces] joint employers of [Hamby]" (Compl. ¶ 13); and (ii) allegations concerning the investigation conducted by the WNBA into the concerns

---

[1] The WNBA refers the Court to its Opposition to Hamby's Countermotion for Leave to File A First Amended Complaint, being filed subsequent to this Reply Memorandum in response to ECF No. 32. As demonstrated therein, the amendments proposed by Hamby in the Proposed First Amended Complaint (the "Proposed Amended Complaint") concerning the Collective Bargaining Agreement between the WNBA and the Women's National Basketball Players Association, the union for WNBA players (the "CBA") fail to salvage her claims and, thus, the proposed amendment is futile.

Hamby raised in January 2023 (Compl. ¶¶ 51-52, 56-57).  These allegations are insufficient, as a matter of law, to establish joint employment. *See Bayne v. Bowles Hall Found.*, 2021 WL 5205587, at *5-6 (N.D. Cal. Nov. 9, 2021) (granting motion to dismiss claims where the plaintiff did "not allege any direct involvement by the [University] in hiring Plaintiff, evaluating her performance or terminating her" and instead made clear that the foundation that employed her performed these functions.).

Plainly recognizing the deficiencies of her original Complaint, Hamby seeks to add in her Proposed Amended Complaint allegations concerning the CBA.[2] (*See* ECF No. 32.)  However, these allegations are also legally insufficient to establish that the WNBA "controlled" her employment.

The newly-added allegations focus upon contractually agreed upon rights set forth in the CBA, including the WNBA's alleged right to impose fines and suspensions; to provide for health insurance and other benefits, and to investigate. (Proposed Amended Complaint ¶¶ 14-16.) Hamby admits, however, that, as set forth in the CBA, each WNBA team is a privately owned entity. While Hamby alleges that the CBA sets forth minimum and maximum permissible compensation, she does not allege that the WNBA set her compensation.  Similarly, while Hamby alleges that the WNBA has "control over the annual draft process," she does not allege that the WNBA determines any team's (including the Aces') draft selection.  And while Hamby alleges that the WNBA may approve or rescind trades under the CBA, she does not allege that the WNBA decides who to trade and, in fact, admits in the Complaint that the decision to trade her to the Los Angeles Sparks was made by the Aces.[3]

---

[2] The WNBA acknowledges that the Court will accept Hamby's factual allegations asserted in the Complaint and Proposed Amended Complaint as true solely for purposes of the WNBA's motion to dismiss and Hamby's countermotion for leave to file an amended complaint.  The WNBA does not concede that the allegations raised by Hamby are true or that they accurately describe the provisions of the CBA.

[3] In her opposition brief, Hamby relies on *Salazar v. McDonald's Corp.*, 944 F.3d 1024 (9th Cir. 2019) and *Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453 (N.D. Cal. 2022). Both cases, however, support finding that Hamby's allegations are insufficient.  In *Salazar*, the court found that the plaintiff failed to establish that McDonald's Corporation controlled her employment, wages, hours and working conditions, as it was the franchise that was responsible for hiring, training, setting wages, and disciplinary and termination decisions. *Id.* at 1027.  In *Senne*, which did not involve a collective bargaining agreement, the court held that Major League

2

**DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)**

The Ninth Circuit considered and rejected allegations similar to Hamby's in *Dawson v. National Collegiate Athletic Association*, 932 F.3d 905 (9th Cir. 2019). In *Dawson*, the Ninth Circuit affirmed dismissal of the plaintiff's (a student-athlete) complaint for failing to plausibly allege that the NCAA and PAC-12 were his employers. In so holding, the Ninth Circuit recognized that the NCAA "pervasively regulate[s] college athletics" – for example, the NCAA's constitution and/or bylaws govern financial aid for student athletes, establish academic eligibility requirements, impose limitations on athletic scholarships, and regulate the scheduling and conditions of practices and games. *Id.* at 910. Notwithstanding, the Ninth Circuit held that the plaintiff failed to plead facts supporting that the NCAA or PAC-12 were his employers, such as pleading that they hired and/or fired student athletes, chose the players on any team, or supervised player performance. *Id.* Rather, the allegations in the complaint merely demonstrated that "the NCAA function[ed] as a regulator." *Id.* Here too, Hamby fails to plead facts establishing anything other than that the WNBA's relationship to WNBA players, like Hamby, is akin to a regulator.

Accordingly, whether this Court considers the allegations in either the operative Complaint or the Proposed Amended Complaint, Hamby fails to plead facts establishing that the WNBA exercised the requisite level of control such that it can be considered her employer, requiring dismissal of her retaliation claims asserted against the WNBA.

II. **Even If Hamby Has Sufficiently Plead A Joint Employer Relationship (Which She Has Not), Her Retaliation Claims Against The WNBA Nonetheless Fail.**

   A. **Hamby's Retaliation Claims Premised On The WNBA's Alleged Failure To Conduct A Proper Investigation Should Be Dismissed.**

Hamby's retaliation claims premised on the WNBA's alleged failure to investigate her complaints fail as a matter of law because a failure to investigate does not constitute an adverse

---

Baseball was a joint employer of minor league players because it had significant control over hiring and firing Minor League baseball players; supervised their conditions of employment; set their first-year salaries; and maintained their employment records. *Id.* at 510-528. Here, Hamby has not pled facts establishing that the WNBA exercised a similar level of control over her employment. Indeed, in the original Complaint and the Proposed Amended Complaint, Hamby does not allege that the WNBA played any role in her hire or discharge, the evaluation of her performance, or the setting of her salary. Rather, she admits that her employment contract from 2018 through 2022 was with the Aces, a limited partnership that is separate and apart from the WNBA. (Compl. ¶¶ 13, 17-18, 28).

3
**DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)**

action capable of supporting a retaliation claim. In her Opposition, Hamby first claims that "the Ninth Circuit has not to date addressed whether a failure to investigate a claim . . . constitutes an adverse action for Title VII purposes." (Opp., at 10.) In actuality, the Ninth Circuit held in similar circumstances that a plaintiff alleging that the defendant failed to adequately respond to his complaints regarding an alleged misappropriation of research funds could not make out a Title VII discrimination claim because these allegations did "not amount to an adverse employment action." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000).[4]

In line with *Chuang*, numerous courts in the Ninth Circuit, including courts in this District, have consistently rejected claims premised on an alleged failure to investigate, holding such allegations cannot support a retaliation claim. *See Chesley v. City of Mesquite*, 2023 WL 5206925, at *5 (D. Nev. Aug, 14, 2023) ("Courts generally refuse to consider a failure to investigate an adverse employment action."); *Doe No. 1 v. Wynn Resorts, Ltd.*, 2023 WL 1782439, at *16 (D. Nev. Feb. 3, 2023) (holding an alleged failure to investigate "do[es] not rise to the level of an adverse employment action" and "leaves an employee no worse off than before the complaint was filed"); *Kurdi v. Cal. Dep't of Transp.*, 2023 WL 267538, at *8 (E.D. Cal. Jan. 18, 2023) ("The failure to investigate generally does not amount to an adverse action."); *McKissick v. City of Reno*, 2019 WL 3241161, at *12 (D. Nev. July 18, 2019) (granting summary judgment on retaliation claim involving a failure to investigate because it did not constitute an adverse employment action); *McAllister v. Adecco USA Inc.*, 2018 WL 6112956, at *9 (D. Haw. Nov. 21, 2018) (defendant's "failure to investigate cannot be an adverse employment action"), *aff'd*, 812 F. App'x 708 (9th Cir. 2020); *Nguyen v. McHugh*, 65 F. Supp. 3d 873, 894 (N.D. Cal. 2014) ("[M]erely failing to investigate workplace complaints does not rise to the level of an adverse employment action."), *aff'd sub nom. Nguyen v. Esper*, 722 F. App'x 688 (9th Cir. 2018). In fact, Hamby fails to offer a single case coming out the other way on this issue.

Second, Hamby points to a narrow exception to the general rule that a failure to investigate

---

[4] *Chuang* concerned a discrimination claim, not a retaliation claim, but its reasoning is nevertheless persuasive in demonstrating that Hamby's allegations do not constitute an adverse action capable of supporting a retaliation claim.

4
**DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)**

cannot support a retaliation claim where the defendant's alleged failure to investigate was done in retaliation for a ***separate, earlier complaint*** that the plaintiff previously raised. (*See* Opp., at 11 (citing *McAllister*, 2018 WL 6112956, at *9).)  For instance, in *Rochon v. Gonzalez*, the D.C. Circuit recognized that a plaintiff could support a retaliation claim where the defendant declined to investigate death threats made against him and his family in retaliation for the plaintiff's earlier, unrelated discrimination complaint. 438 F.3d 1211, 1220 (D.C. Cir. 2006).

This exception does not apply to Hamby's claims.  Here, based on Hamby's allegations, she posted a message to Instagram raising allegations regarding her treatment by the Aces on January 21, 2023, and the Executive Director of the WNBA Player's Association sent an email to the WNBA raising the same allegations on January 23, 2023. (Compl. ¶¶ 50-51, 90-91.)  Both complaints alleged the same underlying conduct, and were posted within two days of each other. Hamby therefore cannot show that the WNBA's alleged failure to investigate was done in retaliation for some separate, earlier complaint. *See Williams v. Columbia Univ.*, 2012 WL 3879895, at *3 (S.D.N.Y. Aug. 28, 2012) (rejecting the same argument that Hamby proffers here, holding the plaintiff's multiple complaints "were not 'separate' from her earlier complaints because they related to a single alleged retaliatory scheme").

In a final effort to salvage these claims, Hamby contends that the Supreme Court's holding in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024) "may have consequences for Hamby's claim." (Opp., at 11.)  But *Muldrow* held that a plaintiff challenging a job transfer under Title VII must show that the transfer brought about some harm with respect to an identifiable term or condition of employment. *Id.* at 350.  *Muldrow* did not involve retaliation claims and did not involve an alleged failure to investigate.  It has no effect on Hamby's claims whatsoever, and Hamby's contention otherwise is without merit.

Accordingly, Hamby's retaliation claims premised on the WNBA's alleged failure to investigate her complaints should be dismissed with prejudice because it does not constitute an adverse action and cannot support retaliation claims under Title VII or NRS 613.340.

**B.     Hamby's Retaliation Claims Premised On The WNBA Allegedly Failing To Extend The Marketing Agreement After It Expired Should Be Dismissed.**

1.     <u>Hamby's Retaliation Claims Premised On The Marketing Agreement Were Not Administratively Exhausted.</u>

Hamby admits that she filed her Charge and Amended Charge with the EEOC before her Marketing Agreement with the WNBA expired and that she did not subsequently amend her Charge. (*See* Opp., at 4, 12-13.)  Hamby clearly knew how to amend her Charge after her Marketing Agreement expired if she wanted to – she was represented by counsel at the time and had already amended her Charge once. (*See* ECF Nos. 14-2, 14-3.)  However, Hamby contends that her claims premised on the Marketing Agreement were nevertheless exhausted because they could reasonably be expected to grow out of the EEOC's investigation of her original Charges. (*Id.*)  Hamby is mistaken.

"The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (internal citation and alteration omitted).  In light of this purpose, a court has jurisdiction over allegations that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which can *reasonably be expected* to grow out of the charge of discrimination." *Id.* at 1100 (internal citation omitted).[5]

While courts construe EEOC charges liberally, "there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).  In determining whether a claim could reasonably be expected to grow out of a charge, courts consider "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*  "The crucial element . . . is the factual statement contained" in the Charge." *Id.* (internal citation omitted).  For this reason, "in those cases in which courts have entertained claims despite their omission from an EEOC proceeding, the new allegations have involved different forms that were part of the same

---

[5] Hamby states that her claims were exhausted because they were "within the ambit of the retaliation theory asserted in the charges," (*see* Opp., at 13), but that is not the proper standard.

6
**DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)**

alleged discriminatory scheme." *Rodgers v. Henderson*, 2000 WL 288384, at *3 n.2 (N.D. Cal. Mar. 13, 2000), *aff'd*, 10 F. App'x 467 (9th Cir. 2001).

Here, nothing in the Charge or Amended Charge related to the Marketing Agreement, and Hamby did not even mention the Marketing Agreement. (ECF Nos. 14-1, 14-2.) Instead, Hamby's Charges raised a specific allegation that the WNBA failed to adequately investigate her claim of disparate treatment by the Aces. (*See* ECF Nos. 14-2, 14-3.)[6] Nothing in the Charge or Amended Charge alleged a broader pattern of retaliatory treatment by the WNBA, and nothing would have put the WNBA or the EEOC on notice regarding her allegation pertaining to the non-renewal of her Marketing Agreement, which expired **five months after** the WNBA's investigation into Hamby's claims had concluded. (*See* Compl. ¶¶ 56, 65; ECF No. 14-1 § 1.)

The case *McHenry v. Washoe* is instructive. 2020 WL 1821250 (D. Nev. Apr. 10, 2020). There, the plaintiff brought retaliation claims alleging that she had been constructively discharged and *that* the defendant failed to properly investigate her discrimination complaint. *Id.*, at *2. The Court held that the plaintiff had exhausted her constructive discharge claim because it "reasonably flow[ed] from her Charge allegation that Defendant subjected her to escalating adverse actions – from removing her duties and denying her training, to suspending her." *Id.*  However, the court dismissed the plaintiff's claim alleging a retaliatory failure to investigate, holding that this claim "bears no reasonable relation to her EEOC Charge, which alleges that her Supervisors unilaterally removed her duties, denied her training, and suspended her." *Id.*; *see also Freeman*, 291 F.3d at 637-38 (affirming dismissal of discrimination claims where the plaintiff's charge had "refer[red] only to discriminatory conduct in relation to a specific election" at his workplace and "nothing in [the] charge would have indicated that an investigation should focus on anything more than the allegations of discrimination by those particular individuals involved in the. . . election.").[7]

---

[6] Hamby's contention that her allegations in the Charges regarding **the Aces** would have put the EEOC on notice regarding the Marketing Agreement is not persuasive, as those allegations did not relate to the WNBA or the Marketing Agreement whatsoever.

[7] In the cases that Hamby relies on, the plaintiffs' charges alleged a much wider range of actions by the defendants, leading those courts to hold that the new allegations at issue could reasonably be expected to grow out of the charges. *See Sosa v. Hiaoka*, 920 F.2d 1451, 1456-57 (9th Cir. 1990) (plaintiff alleged in his charge "a pattern and practice of retaliating against [him]"); *Vasquez v. Piper Sandler & Co.*, 2024 WL 4364147, at *1, 10-12 (D. Ariz. Sept. 30, 2024) (plaintiff alleged

Hamby's claims related to the Marketing Agreement would not reasonably be expected to grow out of her Charges, meaning that Hamby failed to exhaust her administrative remedies with respect to those claims. Accordingly, Hamby's retaliation claims premised on the Marketing Agreement should be dismissed with prejudice.[8]

### 2. Hamby Cannot Assert Retaliation Claims Premised On The Marketing Agreement Because She Was An Independent Contractor Under That Agreement.

Hamby does not dispute that she was an independent contractor under the Marketing Agreement. She therefore concedes this argument. *See Carrington Mortg. Servs., LLC v. Ticor Title of Nev., Inc.*, 2020 WL 3958251, at *3 (D. Nev. July 8, 2020) ("[F]ailure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (internal citation and alteration omitted).

Instead, Hamby argues that her retaliation claims premised on the Marketing Agreement are cognizable because Title VII retaliation claims can "reach[] conduct outside the course of employment." (Opp., at 14.) But Hamby offers no support for the contention that this principle overrides black-letter law holding that independent contractors, like Hamby, are exempt from bringing claims under Title VII and NRS 613.340.[9]

Because Hamby concedes that she was an independent contract under the Marketing

---

a series of escalating discriminatory and retaliatory actions by the defendant); *Ware v. NBC Nev. Merchs., Inc.*, 219 F. Supp. 3d 1040, 1049 (D. Nev. 2016) (claims alleging a hostile work environment were exhausted because they arose in retaliation for the events that the plaintiff asserted in her charge); *Pratt v. Hawaii, Dep't of Pub. Safety*, 308 F. Supp. 3d 1131, 1145-46 (D. Haw. 2018) (plaintiff's retaliation claims were exhausted because they represented a series of retaliatory actions "all occurring within a few months of each other.").

[8] This deficiency defeats Hamby's retaliation claims under both Title VII and NRS 613.340. (*See* Mot. at 12.) Hamby also does not dispute that her time to file a new charge based on the Marketing Agreement has now expired, meaning that any new charge based on the Marketing Agreement would be untimely. (*See id.*)

[9] Hamby's cited cases are not on point because none of them involved independent contractors. In *Burlington Northern v. Santa Fe Railway Co.*, the Supreme Court recognized the broad principle that "[a]n employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace." 548 U.S. 53, 63 (2006). *Arias v. Raimondo* applied this principle to hold that a plaintiff could bring a Fair Labor Standards Act retaliation claim against his employer's attorney 860 F.3d 1185, 1190-92 (9th Cir. 2017). In *Hughes v. Pacific University*, the court held that a plaintiff could bring retaliation claims premised on his employer denying his request to use professional development funds. 2023 WL 7497106, at *11 (D. Or. Nov. 13, 2023).

8

**DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)**

Agreement, she cannot bring claims under Title VII or NRS 613.340. Accordingly, Hamby's retaliation claims premised on the Marketing Agreement should be dismissed with prejudice.[10]

### 3. Hamby Cannot Make Out A *Prima Facie* Case For Her Retaliation Claims Premised On The Marketing Agreement Given The Ten Month Gap Between Her Complaints And The Marketing Agreement Not Being Extended.

Even if Hamby had administratively exhausted her claims premised on the Marketing Agreement and was not an independent contractor under that Agreement, her claims premised on the Marketing Agreement nevertheless fail because Hamby did not plead the requisite causal link between her alleged protected activity and her Marketing Agreement not being renewed.

A plaintiff asserting retaliation claims under Title VII and NRS 613.340 must plead sufficient factual allegations to support a causal link between the plaintiff's alleged protected activity and the subsequent adverse employment action. *See Pratt*, 308 F. Supp. 3d at 1146 (dismissing retaliation claim that failed to allege sufficient facts to infer the requisite causal link). While a plaintiff need not explicitly plead a *prima facie* case, the complaint must still "allege direct or circumstantial evidence from which causation can be inferred, such as an employer's pattern of antagonism following the protected conduct, . . . or the temporal proximity of the protected activity and the occurrence of the adverse action." *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300-1301 (N.D. Cal. 2020) (internal citations omitted).

Hamby's Complaint (whether in original form or the Proposed Amended Complaint) fails to allege any facts establishing a causal connection between Hamby's complaints in January 2023 and her Marketing Agreement not being renewed in October 2023. As a matter of law, this significant time gap cannot establish the requisite causal link. *See Manatt v. Bank of Am., NA*, 339 F.3d 792, 802 (9th Cir. 2003); *Pratt*, 308 F. Supp. 3d at 1148.[11]

---

[10] Proposed Amicus argues that Hamby was not an independent contractor under the Marketing Agreement. (*See* ECF No. 34-1 ("Amicus"), at 13-14.) This argument should be disregarded because Hamby does not challenge her independent contractor status under the Marketing Agreement. *See U.S. v. Wahchumwah*, 710 F.3d 862, 868 n.2 (9th Cir. 2013) ("[T]he court will not consider arguments raised only in amicus briefs.").

[11] In fact, Hamby admits in the Complaint that her relationship with the WNBA has flourished since the WNBA's investigation. In 2024, she was given the honor of playing in the 2024 All-star game and chosen as a member of USA Basketball's Women's National Team for the 2024

In recognizing that this significant time gap dooms her ability to establish a causal connection, Hamby proffers two arguments, but neither are persuasive. First, Hamby suggests that her filing of the Charge in September 2023 was also protected activity giving rise to her retaliation claims. (Opp., at 15.) But Hamby never made this allegation in the Complaint or Proposed Amended Complaint. Rather, the Complaint explicitly states that Hamby allegedly "engaged in protected activity": (i) "on January 21 2023 by publicly complaining about her discriminatory treatment by Defendant Las Vegas Aces"; and (ii) "on January 23, 2023 by complaining directly to the Defendant WNBA and requesting an investigation." (Compl. ¶¶ 90-91.) Hamby never tied her filing of the Charge to her protected activity, and she cannot remedy this pleading deficiency through her opposition brief. *See Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

Second, Hamby contends that the Court may overlook the ten-month gap between her complaints and the Marketing Agreement expiring by claiming that the WNBA did not have an earlier opportunity to allegedly retaliate against her. (*See* Opp., at 15.) Putting aside that Hamby again did not raise this allegation in her Complaint, this argument misses the mark because the WNBA of course did have the opportunity to act more expeditiously if it had chosen to. The WNBA had the right under the Marketing Agreement to terminate the Agreement at any time that it determined that Hamby was in breach. (ECF No. 14-1 § 6.) The WNBA did not do that, and indeed, nothing regarding Hamby's relationship with the WNBA changed following her complaints. The Marketing Agreement continued through its set term and expired on the date that the parties had agreed to. *See Reed v. Avis Budget Grp.*, 2010 WL 11530279, at *6 (N.D. Cal. Dec. 17, 2010) (rejecting similar argument where the defendant "had an opportunity . . . to retaliate against [the] Plaintiff," and did not do so.), *aff'd*, 472 F. App'x 525 (9th Cir. 2012).[12]

---

Olympic Games. (Compl. ¶¶ 23-24.) Since filing the Complaint, the WNBA announced that Hamby had been named the recipient of the 2024 Kim Perrot Sportsmanship Award.

[12] This makes Hamby's claims fundamentally dissimilar from the cases she relies on, all of which involved a defendant that truly did not have an opportunity to retaliate until a subsequent change in circumstances. In *Porter v. California Department of Corrections*, the retaliatory actor was not in a position to retaliate until he had been promoted. 419 F.3d 885, 895 (9th Cir. 2005). In *Oden Meyers v. Kendall*, the company's merger gave the plaintiff's supervisors the first opportunity to retaliate. 2024 WL 3743694, at *12 (C.D. Cal. June 3, 2024) In *Pringle v. Wheeler*, the plaintiff's

1    Accordingly, Hamby cannot establish a causal connection between her alleged protected
2 activity and the Marketing Agreement expiring ten months later, and thus cannot establish a *prima*
3 *facie* case of retaliation. Her retaliation claims under Title VII and N.RS 613.340 premised on the
4 Marketing Agreement should therefore be dismissed with prejudice.

5 **III.    Hamby's Retaliation Claims Brought Under NRS 613.340 Fail Because Hamby Was Not Employed In Nevada At The Time Of The Events Giving Rise To Her Claim.**
6

7    Hamby does not dispute that she was employed in California at the time of the events
8 giving rise to her claims. Nor does she dispute that by its plain statutory language, Nevada's anti-
9 discrimination and retaliation laws do not apply to "[a]ny employer with respect to employment
10 outside this state." NRS 613.320. Hamby does not cite to a single case holding that NRS 613.340
11 can nevertheless apply to someone, like Hamby, who worked outside of Nevada at the time of the
12 events giving rise to her claims.

13    Hamby argues that she is nonetheless covered under Nevada law because "Nevada courts
14 permit the claim of post-employment retaliation." (Opp., at 16.) But Hamby cites to no caselaw
15 holding that this principle can override N.R.S. 613.320's plain statutory language. *Bunar v. Aliante*
16 *Gaming, LLC*, the lone case that Hamby cites, had nothing to do with the territorial limitation of
17 N.R.S. 613.340, and did not even state where the plaintiff was located at the time of the events
18 giving rise to her claims. *See* 2017 WL 3469271, at *3 (D. Nev. Aug. 10, 2017).

19    Hamby's claim that the WNBA's "alleged acts of retaliation arise out of Hamby's
20 employment in Nevada" (Opp. at 16) is also fundamentally misplaced. The Complaint makes clear
21 that Hamby was told she had been traded to the Los Angeles Sparks (which are located in
22 California) on January 16, 2023, and the trade was publicly announced on January 21, 2023.
23 (Compl. ¶¶ 48-49.) Hamby raised her complaints regarding her treatment by the Aces on January
24 21, 2023 (after already having been traded) and on January 23, 2023. (*Id.* ¶¶ 50-51.) The WNBA's
25 investigation commenced on February 8, 2023, and Hamby's Marketing Agreement expired on
26 October 28, 2023. (*Id.* ¶ 52; ECF No. 14-1 § 1.) Accordingly, all of the events giving rise to

27
28 request for leave gave his supervisor an opportunity to retaliate by denying the leave request. 478 F. Supp. 3d 899, 918 (N.D. Cal. 2020).

Hamby's claims arose after she was employed by the Los Angeles Sparks in California. Hamby's argument that the WNBA's investigation was "partly conducted in Nevada" or that it "involved a Nevada employer" (Opp., at 16), are irrelevant as neither matters under NRS 613.320.

Finally, Hamby briefly contends that she can bring claims under NRS 613.340 because Nevada's anti-discrimination laws are typically interpreted coextensively with Title VII. (*See* Opp., at 17.) But while Nevada courts often look to Title VII for guidance, Title VII obviously is a federal law that applies across the United States, while Nevada laws are unique to this state and principally apply to the citizens of this state. The fact that Nevada law is typically interpreted coextensively with Title VII does not alter that Hamby is not covered under NRS 613.340.

Here, Hamby has a potential remedy for her claims under Title VII. She therefore fails to support why her claims necessitate a radical expansion of Nevada law which no court has previously held. Based on NRS 613.320's express language, it would be unprecedented for this Court to hold that Hamby, who worked in California during all of the events giving rise to her claims, may nevertheless bring claims under NRS 613.340. Accordingly, Hamby's retaliation claim brought under NRS 613.340 should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the WNBA respectfully request that the Court dismiss Plaintiff's retaliation claims under Title VII and NRS 613.340 against the WNBA in their entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

DATED: November 6, 2024

/s/*Marian L. Massey, Esq.*
Ismail Amin, Esq. (9343)
Marian L. Massey, Esq. (14579)
**TALG, NV, LTD**
5852 S. Durango Dr., Suite 105
Las Vegas, Nevada 89113
Tel.: (702) 954-3861
Fax.: (949) 266-8406
iamin@talglaw.com
mmassey@talglaw.com

/s/ *Elise M. Bloom*
Elise M. Bloom (admitted *pro hac vice*)
Michelle A. Annese (admitted *pro hac vice*)
Jordan B. Glassberg (admitted *pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036-8299
Tel.: (212) 969-3000
Fax: (212) 969-2900
ebloom@proskauer.com
mannese@proskauer.com
jglassberg@proskauer.com

*Attorneys for Defendant WNBA, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2024, I electronically filed a true and correct copy of **DEFENDANT WNBA, LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND JURY DEMAND (ECF NO. 14)** with the Clerk of the Court using the CM/ECF system, which sent notification to the following counsel of record in this matter:

**Artur Davis, Esq.**
HKM Employment Attorneys LLP
2024 3rd Avenue N, Suite 212
Birmingham, AL 35203
Tel: 205-881-0935
adavis@hkm.com

**Dana Sniegocki, Esq.**
HKM Employment Attorneys LLP
101 Convention Center Drive, Suite 600
Las Vegas, NV 89109
Tel.: 702-623-7279
dsniegocki@hkm.com

**Erin S Norgaard, Esq.**
HKM Employment Attorneys LLP
600 Stewart Street
Suite 901
Seattle, WA 98101
Tel.: 206-838-2504
enorgaard@hkm.com

*Attorneys for Plaintiff Dearica Hamby*

/s/ Kavita Narh
An employee of TALG, NV, Ltd.